Scott **DAVIDSON** and Brian Davidson, Juveniles Under the Age of 14 Years, Appellants,

v.

**COMMONWEALTH of Kentucky,** Appellees.

Court of Appeals of Kentucky.

Feb. 27, 1981.

J. Fox DeMoisey, Charles E. Ricketts, Jr., Bleidt, DeMoisey & Ricketts, Louisville, for appellants.

Steven L. Beshear, Atty. Gen., Willie E. Peale, Jr., Suzanne Guss, Asst. Attys. Gen., Frankfort, for appellees.

Before HOWARD, HOWERTON and LESTER, JJ.

HOWARD, Judge.

This is an appeal from a judgment in the Jefferson Circuit Court affirming a judgment in the Jefferson District Court, Juvenile Division. Scott Davidson, age 11, appeals his conviction for criminal mischief in the first degree and joins Brian Davidson, age 7, in appealing the court's ruling that

probable cause existed to initially arrest both appellants.

The points on appeal in this troubling case are: 1) whether the arresting officer knew sufficient facts prior to taking the boys into custody to conclude there was probable cause for arrest; 2) whether appellants' arrest or detention was in violation of K.R.S. 208.110 and K.R.S. 208.120; 3) whether the "confessions" obtained by the arresting officer were procured illegally and therefore should be suppressed; 4) whether the proof relied on in the court's determination of guilt was improperly admitted or used and whether the proof shows guilt beyond a reasonable doubt; 5) whether appellants' Fourth Amendment rights were violated by their warrantless arrest; and 6) whether appellants were misled by a trial court ruling which induced them not to put on witnesses.

Resolution of this case requires a rather detailed recital of the facts. On August 20, 1979, Mrs. Bilbrey discovered that a house she and her husband owned, located at 1006 Grade Lane in Louisville, Kentucky, had been vandalized. She had last visited the house, which they were preparing to lease, some five days previously. She called the police from the home of Mike McFarland and Terry Raisor, located two houses down from the Bilbrey house.

Officer Cissell responded to the call at approximately 7:30 P.M. and examined the house. Cissell, a part-time electrical contractor, estimated that the damage amounted to approximately $7,000.00 to $7,500.00, sufficient to make the vandalism a felony offense. He asked the Bilbreys if they had any idea who had done the damage. Mrs. Bilbrey told him that Ms. Raisor, the neighbor, had told her that "Scott and Brian" did it. Cissell testified that the Bilbreys volunteered this information without being asked.

Further, Cissell testified that Mrs. Bilbrey told him that Mr. Bilbrey had seen the Davidson boys tear up another empty house at some unspecified time. This evidence was objected to by the defense, first because it had nothing to do with the damage

to the Bilbrey house and, in and of itself, shows no motive, plan or scheme and, second, because it was hearsay. The evidence was admitted by the trial court for identification purposes, a question not raised, and not for substantive purposes.

Cissell then went to speak to McFarland and Raisor. He testified that "I asked them if they knew and seen who had done it and they advised that they did. And they advised me it was the two Davidson boys."

McFarland testified that he only told Cissell that the day before he had heard glass breaking and upon investigation, less than two minutes, he saw Scott Davidson "leaving the backyard" of the Bilbrey house. The Davidson backyard adjoins the backyard of the Bilbrey house.

Ms. Raisor testified that she did not speak to Cissell at that time about the Davidson boys except to point out where they lived. She stated that she was not present when Cissell questioned McFarland and that later, apparently *after* the boys' detention, she "didn't tell him that I was for sure that I knew that they were the ones that did it." She also testified at trial that she had seen the Davidson boys with some other children running through the Bilbrey yard on the nineteenth.

After obtaining the above information, Cissell proceeded to the Davidson home. He testified that he was admitted to the house by Cindy Davidson, the sixteen-year-old sister of the boys. He asked where the boys were and was told that they were in bed. It was then approximately 8:00 P.M. Upon his request to speak to the boys, she went to the bedroom and brought the boys back fully dressed except for shoes. Cissell told the boys to get their shoes on and they left the room. Cissell then asked Cindy how old she was and upon learning her age, told her "well, you're old enough to understand, then, and to advise your parents that I'll have them over at the substation on the Outer Loop." He then asked for the Davidson phone number "so that I could call back and talk to the parents."

Cissell admits that he had not stated either to the boys or to Cindy that the boys were under arrest or detained or what the charges were. He also admits that Cindy told him that the parents would be back shortly and testified that he has "always made a practice that I just don't wait." He did not advise the boys or their sister of their *Miranda* rights.

Cissell then testified that shortly after the boys returned to the room with their shoes, Scott blurted out that "we weren't the only ones that done it" and that as they left the house, Brian stated "we weren't the only ones." Cissell said he had not then, nor had he ever questioned the boys.

■ Appellants asserted at trial and again here that Officer Cissell lacked sufficient information to conclude that there was probable cause to arrest the Davidson boys. Probable cause, as we have stated in *Shull v. Commonwealth*, Ky., 475 S.W.2d 469, 471·(1972), "exists when the facts and circumstances within the arresting officer's knowledge or of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been committed or is being committed." "Suspicion of the commission of a felony is insufficient to authorize an arrest." *Guthrie v. Commonwealth*, Ky., 508 S.W.2d 40 (1974).

■ At the time Officer Cissell took the Davidsons into custody, he knew 1) that an estimated $7,000.00 to $7,500.00 worth of damage had been done to the Bilbrey house; 2) that Scott Davidson had been seen in the Bilbrey backyard less than two minutes after glass-breaking had been heard; and 3) that Mrs. Bilbrey said Mr. Bilbrey had seen the Davidson boys tear up another vacant house at some unspecified previous time. It should also be pointed out that Officer Cissell testified at trial that he did not know McFarland, Raisor or Mrs. Bilbrey before this time and that he knew Mr. Bilbrey only slightly as a wrecker operator who sometimes worked for the police department.

Officer Cissell had no independent knowledge of the perpetrator of the vandalism. We agree with appellants that there was insufficient information to form a conclusion that there was probable cause for arrest of the Davidson boys. At most, Officer Cissell had grounds to suspect the boys and continue investigation.

Appellants also contend that they were arrested or detained in contravention of K.R.S. 208.110 and K.R.S. 208.120. K.R.S. 208.110 reads, in pertinent part, as follows:

(3) When a peace officer has taken or received a child into custody on a charge of committing an offense ... the officer shall immediately notify the parent, or if the parent is not available, then a relative, guardian, or custodian of the child, that the child has been detained; give an account of specific charges against the child, including the specific statute alleged to have been violated, and the reasons for the detention, and state the time and place of the detention hearing. Unless the nature of the offense or other circumstances are such as to indicate the necessity of keeping the child in secure custody, the officer shall release the child to the custody of his parent or other responsible adult upon the written promise, signed by such person, to bring the child to the court at a stated time or at such time as the court may direct ....

K.R.S. 208.120 states:

No child under sixteen (16) shall at any time be detained in any police station, lockup, jail or prison, except that on the basis of a hearing for that purpose, by the juvenile court judge, a child whose conduct or condition is such as to endanger his safety or welfare or that of others in the detention facility for children, may be placed in a jail or other place of detention for adults, but in a room or ward entirely separate from adult prisoners.

■ Officer Cissell admits that he did not carry out all the requirements of K.R.S. 208.110 in that: 1) he did not tell Cindy the specific charges against the children, including the specific statute alleged violated (the trial court ruled that this was so); 2) he did

not state the time and place of detention hearing; and 3) he offered *no* reason as to the necessity of keeping the children in custody.

The trial court in its ruling made the statement that "you *may* release him (the child) to the parents." We find that this is an error. The statute specifically says that in the absence of circumstances necessitating secure custody, the officer *shall* release the child.

■ The appellee argues that the statutory language of K.R.S. 208.110 is directory rather than mandatory and that Officer Cissell substantially complied with the procedure. We cannot agree. The statute specifically states that "the officer *shall immediately* notify" the parent or guardian of the details of the arrest. The fact that the legislature went into such detail in prescribing the steps that should be taken in detaining a juvenile mitigates against the directory argument.

Further, Officer Cissell violated K.R.S. 208.120 in stating his intention to take the children to the Police Substation on the Outer Loop without a hearing by a Juvenile Court Judge to determine that such action is necessary.

■ Appellants next contend that the confession of Scott that "we weren't the only ones that done it" should not have been admitted because of the failure of Officer Cissell to give Miranda warnings and because of the mandate of the United States Supreme Court in *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 527 (1967). Appellants cite the following language of the *Gault* Court:

> [A]n admission by the juvenile may (not) be used against him in the absence of clear and unequivocal evidence that the admission was made with knowledge that he was not obliged to speak and would not be penalized for remaining silent.
> . . . .
> [T]he greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not a

product of ignorance of rights or of adolescent fantasy, fright or despair.

*Supra*, 18 L.Ed. at 555, 561.

While we recognize that in *Gault* the Supreme Court was "not concerned with the procedures or constitutional rights applicable to the pre-judicial states of the process," *Gault, supra*, 18 L.Ed. at 538, this Court feels that the point is well taken. There is nothing in the evidence that shows any reason why Officer Cissell could not have taken the perhaps five minutes necessary to explain to Cindy, the sister in charge of the boys, what their constitutional rights were. Officer Cissell explained that he felt he had kept the Bilbreys waiting long enough, but from his testimony it seems that he was in the Davidson home at most ten minutes and probably less. Further, the statement was never reduced to writing; only Officer Cissell testified to its ever having been made.

Given the specificity and care put into the drafting of the juvenile statutes previously referred to, it is apparent that our legislature was concerned with the protection of the rights of accused juveniles when they come in contact with our law enforcement agencies. We can find no reason to permit a law officer to testify to statements that might not have been made had the eleven-year-old child been told of his right to remain silent.

In summary, we find 1) that Officer Cissell lacked probable cause to arrest appellants; 2) that in that arrest K.R.S. 208.110 was violated; and 3) that the "confession" of Scott Davidson should not have been admitted into evidence. Given these findings, we need not consider the other issues presented on appeal.

Therefore, the judgment is reversed and remanded for proceedings consistent with this opinion.

All concur.