Ronnell MURPHY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee,

and

Commonwealth of Kentucky, Appellant,

v.

Ronnell Murphy, Appellee,

and

Ronnell Murphy, Appellant,

v.

Commonwealth of Kentucky, Appellee,

and

Dennis Sprowls (a/k/a Dennis Randall
Lawler), Appellant,

v.

Commonwealth of Kentucky, Appellee,

and

Commonwealth of Kentucky, Appellant,

v.

Dennis Sprowls, (a/k/a Dennis Randall
Lawler), Appellee,

and

Brandon Weathers, Appellant,

v.

Commonwealth of Kentucky, Appellee,

and

Commonwealth of Kentucky, Appellant,

v.

Brandon Weathers, Appellee.

Nos. 1997–SC–0595–MR, 1997–SC–0607–
MR, 1998–SC–0960–MR, 1997–SC–
0606–MR, 1997–SC–0621–MR, 1997–
SC–0616–MR and 1997–SC–0622–MR.

Supreme Court of Kentucky.

April 26, 2001.

Rehearing Denied Aug. 23, 2001.

Donna L. Boyce, Timothy G. Arnold, Department of Public Advocacy, Frankfort, for Ronnell Murphy.

Richard Hoffman, Department of Public Advocacy, Frankfort, for Dennis Sprowls.

Rebecca B. Diloreto, Department of Public Advocacy, Frankfort, for Brandon Weathers.

A.B. Chandler III, Attorney General, William L. Daniel II, Assistant Attorney General, Criminal Appellate Division, Frankfort, Charles C. Simms III, Geoghegan & Associates, Bardstown, for Commonwealth of Kentucky.

GRAVES, Justice.

Appellants, Brandon Weathers, Dennis Sprowls, and Ronnell Murphy, were convicted in the Larue Circuit Court for first-degree burglary, kidnapping, and second-degree assault. Each was sentenced to a total of twenty-five years imprisonment, and appeals to this Court as a matter of right. For the reasons set forth herein, we affirm Weathers' and Sprowls' convictions; however, we reverse Murphy's conviction and remand the matter to the trial court for further proceedings.

During the evening of August 15, 1995, Weathers, Sprowls, and Murphy, who were all fourteen years of age at the time, burglarized the home of eighty-four year old Thallie Milby. Murphy's thirteen year old cousin, Alandre Murphy, waited outside while Appellants forced in an air conditioning unit and entered the home. Weathers

and Murphy pushed Milby into a chair and bound her ankles and wrists with duct tape, as well as covered her eyes and mouth with the tape. The intruders thereafter cut the phone lines. At some point during the commission of the crime, Weathers cut off locks of Milby's hair. Before leaving, Weathers attempted to loosen the duct tape with a pair of scissors, and in the process lacerated Milby's arm causing some venous bleeding. All that Appellants took from Milby's home was a purse containing twenty dollars.

All four participants were subsequently arrested and indicted. Weathers, Sprowls and Ronnell Murphy were transferred to circuit court and tried jointly as adults. Alandre Murphy's case remained in juvenile court. Following a trial, the jury convicted Appellants and returned sentences of ten years for first-degree burglary, ten years for kidnapping, and five years for second-degree assault, which the jury recommended be served concurrently. At sentencing, however, the trial court ordered the sentences to run consecutively. This appeal ensued. Additional facts will be set forth as necessary. We first address the issues raised by all three Appellants and then turn to individual issues.

### ERRORS ASSERTED BY WEATHERS, SPROWLS, AND MURPHY

I. *Imposition of consecutive sentences*

■ Appellants argue that the trial court erred by imposing consecutive terms of imprisonment contrary to the recommendation of the jury that Appellants' sentences be served concurrently. Appellants concede that this issue is not preserved but contend that they have suffered manifest injustice so as to constitute palpable error under RCr 10.26. We disagree.

■ KRS 532.055 does not impose a duty upon the trial court to accept the recommendation of the jury as to sentencing. *Dotson v. Commonwealth*, Ky., 740 S.W.2d 930 (1987). The jury's recommendation is only that, and has no mandatory effect. *Swain v. Commonwealth*, Ky., 887 S.W.2d 346, 348 (1994). The trial court must consider a jury's recommendation, but may also consider the presentence investigation report which has a legitimate role in the sentencing process. Here, the trial court clearly explained its reasons for disregarding the recommendation of the jury in noting Appellants' lack of remorse, lack of parental care, prior juvenile dispositions, and criminal records of the parents. In fact, the trial court commented that it was "one concerned neighbor away from trying a death penalty case." We conclude that the trial court did not abuse its wide discretion in sentencing. There was no error.

II. *Second–Degree Assault Charge*

■ Appellants contend that the Commonwealth failed to introduce sufficient evidence to support the second-degree assault charge and thus, the trial court erred in refusing to grant a directed verdict. Appellants concede that although they moved for a directed verdict at both the close of the Commonwealth's case-in-chief as well as the close of all evidence, they did not object to the language of the assault instruction.

KRS 508.020 provides, in pertinent part:

(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

During a conference on instructions, the trial court specifically found that Milby did not suffer a serious physical injury as a result of being cut with the scissors. Moreover, the trial court ruled that although Appellants were armed with knives, such were never used, and under the facts presented, the scissors were not a deadly weapon. Nonetheless, the relevant portion of jury instruction stated:

That in this county on or about August 15, 1995, and before the finding of the indictment herein, he and or others, acting in complicity with the others intentionally or wantonly caused a physical injury to Thallie Milby by cutting her[.]

Clearly, the trial court erred in including a wanton element in the instruction since it had previously ruled that Milby did not suffer a serious physical injury. *See* KRS 508.020(1)(c). However, the issue on appeal is not whether the instruction was correct, but whether the evidence was sufficient to avoid a directed verdict of acquittal. We are of the opinion that the Commonwealth presented sufficient evidence for the jury to reasonably find Appellants guilty of second-degree assault.

The Commonwealth introduced evidence that Milby suffered at least two cuts on her arms from the scissors, as well as several other scrapes and contusions. Appellant Sprowls admitted in his statement that Appellant Weathers had cut locks of Milby's hair while she was bound with the duct tape. Moreover, there was testimony that at the time Appellants left Milby's house, they believed she might die as a result of the severe bleeding from the cut on her arm. If, as Appellant Weathers claims, the cut to Milby's arm was accidental, then it was inconsistent for Appellants to leave the house instead of calling for help or attempting to stop the bleeding. The cutting may have been an accidental or unintended act; however, Appellant's subsequent actions in abandoning a bleeding victim are certainly subject to a reasonable inference that they intended an intentional death by exsanguination from the accidental laceration.

■ Unquestionably, the cuts that Milby sustained satisfy the element of physical injury. Furthermore, this Court has previously held that scissors may constitute a dangerous instrument. *Commonwealth v. Potts*, Ky., 884 S.W.2d 654 (1994). As such, viewing the evidence as a whole, it was reasonable for the jury to conclude that Appellants intentionally caused physical injury to Milby with a dangerous instrument. The Commonwealth produced sufficient evidence to withstand a directed verdict on the second-degree assault charge, and thus no error occurred. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

### III. *Kidnapping Exemption Statute*

Appellants argue that they were entitled to the benefit of the kidnapping exemption statute since the restraint of Milby was incidental to the commission of the burglary. Again, we disagree. The exemption, which is found in KRS 509.050, provides, in relevant part:

A person may not be convicted of unlawful imprisonment in the first-degree, unlawful imprisonment in the second-degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of the offense, unless the interference exceeds that which is ordinarily incidental to the commission of

the offense which is the objective of his criminal purpose.

■■ Application of the exemption is determined on a case-by-case basis. *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993), *overruled on other grounds, St. Clair v. Roark,* Ky., 10 S.W.3d 482 (1999); *Gilbert v. Commonwealth,* Ky., 637 S.W.2d 632 (1982), *cert. denied,* 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983). A three-part test must be satisfied before the exemption is applicable. First, the criminal purpose must be the commission of an offense defined outside Chapter 509; second, the interference with the victim's liberty must occur immediately with and incidental to the commission of the underlying offense; and finally, the interference with the victim's liberty must not exceed that which is normally incidental to the commission of the underlying offense. *Smith v. Commonwealth,* Ky., 610 S.W.2d 602 (1980); *see also Griffin v. Commonwealth,* Ky., 576 S.W.2d 514 (1978).

■ Here, the first prong of the test is satisfied since the underlying offense was first-degree burglary, defined in KRS 511.020. The question then becomes whether the interference with Milby's liberty was incidental to the commission of the burglary and of a type normally associated with such offense. In *Timmons v. Commonwealth,* Ky., 555 S.W.2d 234, 241 (1977), we held that "if the victim of a crime is going to be restrained of his liberty in order to facilitate its commission, the restraint will have to be close in distance and brief in time in order for the exemption to apply."

The duration of Milby's restraint exceeded the scope of time necessary for Appellants to commit the burglary. Appellants entered Milby's home between 11:00 p.m. and midnight on the night in

question, and proceeded to bind her wrists and ankles as well as cover her eyes and mouth with tape. Milby was not released until approximately 10:30 a.m. the next morning when she was discovered by a neighbor. Thus, the duration of her restraint exceeded ten and one-half hours, and would have been longer had she not been found. It is reasonable to infer that as far as Appellants were concerned, she would be restrained indefinitely. Clearly, ten and one-half hours went far beyond the time necessary to accomplish the mere theft of her purse. Moreover, the nature of the restraint was more than necessary to commit a burglary. While a temporary binding of Milby's hands and ankles certainly may have been associated with accomplishing a burglary, there was no reason to cut her arms and locks of her hair.

■ The kidnapping exemption statute is to be strictly construed and the burden is upon a defendant to show that it should apply. *Timmons, supra.* The trial court has the duty to determine if a kidnapping charge is excessive or unfounded under the circumstances of the case. *Calloway v. Commonwealth,* Ky., 550 S.W.2d 501 (1977). The trial court made such determination and found that Appellants had not demonstrated entitlement to the exemption. In the absence of any abuse of discretion, we will not disturb the trial court's decision.

## ERRORS ASSERTED BY MURPHY AND SPROWLS

I. *Peremptory Challenges*

■ At a pretrial hearing, the trial court raised the issue of peremptory challenges *sua sponte* and allotted a total of twelve peremptory challenges to Appellants, nine to be exercised collectively and one to be exercised independently of each other. Neither counsel for Sprowls nor

Weathers objected to the allotment. Counsel for Murphy objected to the allotment and requested eight additional strikes for his client. The motion was denied. On appeal, Murphy and Sprowls argue that the trial court misinterpreted RCr 9.40, which provides, in pertinent part:

> (1) If the offense charged is a felony, the Commonwealth is entitled to five (5) peremptory challenges and the defendant or defendants jointly to eight (8) peremptory challenges . . .
>
> (2) If one (1) or two (2) additional jurors are called, the number of peremptory challenges allowed each side and each defendant shall be increased by one (1).
>
> (3) If more than one defendant is being tried, each defendant shall be entitled to at least one additional peremptory challenge to be exercised independently of any other defendant.

In this case, all three Appellants were tried together and one alternate juror was seated. Therefore, under a proper interpretation of RCr 9.40, they were entitled to nine shared peremptory strikes and each was entitled to two additional peremptory strikes to be exercised separately, for a total of fifteen. *See Springer v. Commonwealth,* Ky., 998 S.W.2d 439 (1999). Instead, Appellants were allotted nine to be shared and one each to be exercised separately, for a total of twelve.

In *Kentucky Farm Bureau Mutual Insurance Co. v. Cook,* Ky., 590 S.W.2d 875, 877 (1979), this Court held that an improper allocation of peremptory challenges is reversible error "if the issue is properly preserved by the adversely affected liti-

gant." Contrary to Appellants' arguments, the error was not preserved by the trial court's *sua sponte* discussion of the allotment, or by Murphy's request for eight additional challenges. Appellants did not object to the trial court's interpretation of RCr 9.40 or offer any contrary interpretation. Thus, Appellants' claim that they were each entitled to an additional challenge was not properly preserved. Furthermore, we find no abuse of discretion in the trial court's denial of Murphy's request for eight additional peremptory challenges.

II. *Refusal To Excuse Juror For Cause*

■ Appellants argue that the trial court erred in refusing to strike Juror Heath [1] for cause after he advised counsel that he had known Milby and her husband for "35 or 40 years." However, a review of the record reveals that this issue is not sufficiently preserved.

During voir dire, Juror Heath stated that he hoped he could form a fair opinion from the evidence. Counsel for Murphy then asked him if he would have any difficulty taking an oath to decide the case strictly on the evidence, to which he responded, "If I swore to it, I'd have to stand back." Counsel for Murphy thereafter moved to strike Juror Heath for cause. However, upon questioning by the court and a clarification by Murphy's counsel, Juror Heath responded, "If I swore to it that I was gonna form an opinion about what I heard that's the way that it would be." Murphy's counsel responded, "I'm sorry. I thought you said you'd have to stand back on the oath, taking it. Okay. Anybody in the next row. . . ."

---

1. There were two prospective jurors names Heath. One was removed from the jury by a defense peremptory strike and the other sat on the jury that convicted Appellants. Although it is unclear which juror is the subject of this issue, our determination that no error occurred renders the question moot.

■ It is clear that the objection by Murphy's counsel was based merely on a misunderstanding of what Juror Heath had said, and that it was withdrawn once Juror Heath's statement was clarified. As such, the issue was not properly preserved for review. Nor do we find the refusal to strike Juror Heath to be palpable error. RCr 10.26. Although Juror Heath stated that he had been acquainted with the Milbys for a number of years, he affirmatively responded that he could exercise impartiality in deciding the case.

■ A trial court has considerable discretion in determining whether a juror should be stricken for cause. *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990). "[U]nless clearly erroneous, the exercise of such discretion is a judicial prerogative and is not subject to review by an appellate court." *Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405, 410 (1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978).

## ERRORS ASSERTED BY MURPHY

I. *Dual Representation*

■ Appellant argues that his counsel's representation of both him and his cousin, Alandre Murphy, violated RCr 8.30 and the Sixth Amendment. During oral argument before this Court, the Commonwealth argued that no conflict of counsel existed because Alandre's juvenile case was over at the time of Appellant's trial. However, in its brief, the Commonwealth concedes that the record does not clearly indicate the status of Alandre's case at the time he was called to testify in this matter. We, too, are unable to discern whether or not Alandre's case was, in fact, fully adjudicated at the time of Appellants' trial. Given that Alandre remained in juvenile court, it is more likely than not that his case was over at the time he testified against Appellants.

The pertinent part of RCr 8.30(1) prohibits dual representation of persons charged with the same or related offenses unless:

(a) the judge of the court in which the proceeding is being held explains to the defendant or defendants the possibility of a conflict of interests on the part of the attorney in that what may be or seems to be in the best interests of one client may not be to the best interests of another, and (b) each defendant in the proceeding executes and causes to be entered into the record a statement that the possibility of a conflict of interests on the part of the attorney has been explained to him by the court and that he nevertheless desires to be represented by the same attorney.

In response to defense counsel's motion to withdraw due to a potential conflict, the trial court ruled that RCr 8.30 was not implicated because Appellant Murphy and Alandre were not codefendants in the same trial, thus counsel was not engaging in dual representation. While this may or may not be an accurate interpretation of the law, depending on whether Alandre's case was fully adjudicated, we nonetheless conclude that any error was harmless.

■ When called at trial, Alandre refused to testify to any details of the crimes in question. Even after being repeatedly confronted with the statement he gave to police, Alandre disavowed much of what he said and declined to provide any information. As such, Appellant was clearly not prejudiced by Alandre's testimony. However, in *Peyton v. Commonwealth*, Ky., 931 S.W.2d 451 (1996), we held that noncompliance with RCr 8.30 was presumptively prejudicial and warranted reversal. In so holding, we overruled that line of cases which stood for the proposition that

a violation of RCr 8.30 merely opened the door for a case-by-case evaluation to determine whether a defendant had, in fact, been prejudiced by such a violation. *See Conn v. Commonwealth*, Ky., 791 S.W.2d 723 (1990); *Smith v. Commonwealth*, Ky., 669 S.W.2d 527 (1984).

Upon reconsideration, we agree that the bright line rule established in *Peyton, supra*, "replaces the proper and thoughtful exercise by the trial court of discretion based on contemporaneous or on-the-spot supervision of the legal situation with a kind of automatic robotic system handed down from on high." *Id.* at 456. (Wintersheimer, J., dissenting). This case illustrates the importance of analyzing individual situations on a case-by-case basis. A violation of RCr 8.30, or as in this case, a questionable violation, which does not result in any prejudice to the defendant, should not mandate automatic reversal. Such a result defies logic and ignores the principles of judicial economy. Accordingly, we hereby overrule *Peyton, supra*, and reinstate the rationale set forth in *Smith, supra, Conn, supra,* and *Holden, supra.*

II. *Introduction of Unredacted Confessions of Co–Defendants*

Prior to trial, Murphy's counsel moved for separate trials or, in the alternative, redaction of Sprowls' and Weathers' confessions. The trial court denied both motions. Although neither Sprowls nor Weathers testified during the guilt phase, their confessions were introduced though the testimony of Sheriff Edlin. Both Weathers' and Sprowls' confessions identified Murphy as one of the participants in the crimes against Milby. Murphy did not make any statements or admit to any participation in the crimes.

■ The Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution guarantee a defendant the right of confrontation. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a confession by a defendant which inculpates a non-confessing codefendant is inadmissible in a joint trial unless the confessing defendant elects to testify and is thus available for cross-examination as to the confession. There are three recognized exceptions to the *Bruton* rule. *Gabow v. Commonwealth*, 34 S.W.3d 63 (2000). A confession of a non-testifying defendant may be admissible at the trial of a codefendant if: (1) the nontestifying defendant's confession is redacted so as to delete any reference to the nonconfessing codefendant. *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998); *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *see also Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989), *cert. denied*, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990), *overruled on other grounds, St. Clair v. Roark*, Ky., 10 S.W.3d 482 (1999); (2) the confession falls within a "firmly rooted" exception to the hearsay rule. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); or (3) the confession possesses "particularized guarantees of trustworthiness" which render the statement at least as reliable as a firmly rooted exception to the hearsay rule. *Id.; Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

■ Since Sheriff Edlin testified as to Sprowls' and Weathers' confessions, there was no redaction, and thus the first exception obviously has no application in this case. Moreover, while Weathers' and Sprowls' confessions may fall under the hearsay exception for declarations against penal interest, KRE 804(b)(3), such exception has yet to be declared "firmly rooted." *Gabow, supra.* Finally, we cannot con-

clude that the confessions have sufficient "particularized guarantees of trustworthiness" so as to render them admissible. Notwithstanding the fact that Weathers' and Sprowls' confessions were self-inculpatory, they were not consistent with regard to Murphy's participation, i.e., they differed as to whether Murphy had a knife and whether he was involved in the planning of the crime.

■■■ The Commonwealth asserts that since Sheriff Edlin testified only to the substance of Sprowls' and Weathers' confessions, the actual confessions were not technically introduced at trial. Thus, according to the Commonwealth, the confrontation clause was not violated since Sheriff Edlin was available for cross-examination. This argument completely misses the mark. Introducing a written or taped copy of a confession or having a witness testify to its contents is a distinction without a difference. In fact, the only distinction may be that it prevented any type of redaction of the confessions. The cross-examination of Sheriff Edlin afforded Murphy no protection against the confessions which directly implicated him.

■■■ The Commonwealth's reliance on the concept of interlocking confessions is also misplaced. The concept of interlocking confessions refers to a factual context in which both codefendants have confessed and inculpated the other. *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); *see also Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Murphy did not make any statements. Thus, there can be no interlocking confessions with regard to Murphy.

The trial court was required to either grant Murphy's motion for a separate trial or redact the confessions of Sprowls and Weathers so as to exclude any reference to Murphy. The decision to permit the introduction of Weathers' and Sprowls' confessions, albeit through the testimony of Sheriff Edlin, violated Murphy's rights under the Confrontation Clause and warrants reversal of his conviction and a new trial.

### III.  *Denial of Probation*

Appellant Murphy raises several issues regarding the trial court's denial of his motion for probation. As we are reversing Murphy's conviction due to the *Bruton* violation, these issues are moot and require no further discussion.

### ERRORS ASSERTED BY SPROWLS

### I.  *Admissibility of Appellant's Statement*

■■■ Appellant Sprowls argues that his taped statement given to Sheriff Edlin was involuntary and inadmissable at trial. At the juvenile transfer hearing, the district court suppressed the statement on the grounds that KRS 610.200 had been violated. At trial, Appellant's counsel objected to the use of the statement and moved for suppression on the same grounds. Without a hearing, the trial court denied the motion.

KRS 610.200 requires a peace officer to immediately notify a child's parent that the child has been taken into custody, and to give the parent notice of the specific charge and the reason for taking the child into custody. In *Davidson v. Commonwealth*, Ky.App., 613 S.W.2d 431 (1981), the Court of Appeals held that the statutory language, "the officer shall immediately notify," was mandatory[2]. In *Davidson*, however, the statements of two juveniles were suppressed on the grounds that not

---

2. The *Davidson* opinion interpreted KRS 208.110 (repealed in 1987), which contained language analogous to the current KRS 610.200.

only did the police officer violate the statutory language of KRS 208.110, but he failed to give the juveniles any Miranda warnings:

> An admission by the juvenile may (not) be used against him in the absence of clear and unequivocal evidence that the admission was made with knowledge that he was not obligated to speak and would not be penalized for remaining silent.
>
> . . . .
>
> [T]he greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not a product of ignorance of rights or of adolescent fantasy, fright or despair.

*Id.* at 435 (quoting *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).

Here, the district court found that Sheriff Edlin made no attempt to notify Appellant's parents in violation of KRS 610.200. However, no issue was raised as to the voluntariness of Sprowls' statements. In fact, Sheriff Edlin testified at trial that Sprowls was read his *Miranda* rights and voluntarily signed the waiver of rights form.

The crux of Appellant's argument on appeal is that his statement should have been suppressed because it was involuntarily obtained. He contends that the trial court erred in failing to hold a *Bradley* hearing to determine the voluntariness. *Bradley v. Commonwealth*, Ky., 439 S.W.2d 61 (1969), *cert. denied*, 397 U.S. 974, 90 S.Ct. 1091, 25 L.Ed.2d 268 (1970). However, a review of the record reveals that Appellant only moved to suppress his statements on the grounds that the district court had found a violation of KRS 610.200. Absolutely no mention of the voluntariness of Appellant's statements was raised in the trial court. As such, and in

light of the fact that the record clearly establishes that Appellant was read his rights prior to giving his statement, we cannot conclude any error occurred. We must note however, that the Commonwealth has again argued that this issue is moot because Appellant's statement was not introduced into evidence. In fact, however, Sheriff Edlin testified concerning the content of Appellant's statement. Contrary to the Commonwealth's belief, the statement was introduced at trial.

## II.  *Contempt Charge*

■ After the jury returned the verdict of guilty, Appellant Sprowls began yelling obscenities at the trial judge and threw a chair in the direction of the bench. As a result, the trial court held Appellant in contempt and issued an order stating, in part:

> 1. That the defendant, Dennis Sprowls, be and is hereby deemed in contempt of this Court.
>
> 2. That for said contempt, the defendant, Dennis Sprowls, is hereby sentenced to 179 days in jail, with commencement of said sentence being reserved until the Defendant has satisfied his sentence of the primary charges herein.
>
> 3. That upon satisfaction of the primary sentence herein, the defendant is to be brought before this Court for a determination of when his aforesaid contempt sentence is to be served.

Appellant argues that the trial court erroneously retained jurisdiction of his case until completion of his underlying sentence in order to run the misdemeanor contempt sentence consecutively to the twenty-five year felony sentence. Appellant concedes that this issue is unpreserved.

■ Recently, in *Norton v. Commonwealth*, 37 S.W.3d 750 (2001), we held:

If we were to permit the KRS 532.110(1)(a) requirement of concurrent sentencing for definite and indeterminate terms to apply to sentences imposed for contempt of court, we have no doubt the requirement would materially limit the court's power of contempt. This we will not do. If the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat. As we stated in [*Woods v. Commonwealth,* Ky., 712 S.W.2d 363, 365 (1986) ], "[w]itnesses cannot be allowed to freely refuse requests of the court with the certainty that their penalty will be of limited duration." ... Similarly, if a defendant knows with certainty that any contempt conviction will simply be ordered to run concurrently with his felony sentence, the court's power of contempt is made meaningless. (Footnote omitted). If the courts are to have any real power to control the behavior of the defendants in their courtrooms, the power of contempt must carry with it a real punishment— the possibility of serving additional time imprisoned for contemptible behavior. Therefore, we hold the KRS 532.110(1)(a) requirement of concurrent sentencing does not apply to terms imposed as punishment for contempt of court.

Accordingly, while we conclude, and the Commonwealth concedes, that the trial court erred in attempting to reserve consideration of the contempt sentence until the completion of Appellant's underlying sentence, the trial court did not err in ordering the contempt sentence to run consecutive to Appellant's sentence for murder.

### COMMONWEALTH'S CROSS–APPEAL

■ The Commonwealth has filed a cross-appeal arguing that the trial court erred in ruling that Appellants could not be convicted of kidnapping as a Class A felony. In discussing the jury instructions, the trial court noted that pursuant to KRS 509.040, in order for kidnapping to be a Class A felony, there must be a serious physical injury or the victim must have been released in an unsafe place. The trial court commented that because it felt the language of the statute was confusing, the court would give Appellants the benefit of the doubt and only permit a conviction for kidnapping as a Class B felony.

We need not reach the merits of this issue because the Commonwealth failed to properly preserve it. The trial court's prohibition of a conviction of kidnaping as a Class A felony effectively constituted an acquittal of such offense. As such, the Commonwealth was required to request a certification of the law. CR 76.37(10); Ky. Const. § 115. A cross-appeal was ineffective to preserve this issue for appellate review.

Appellants Sprowls' and Weathers' convictions and sentences are affirmed. Appellant Murphy's conviction is reversed and the matter is remanded to the LaRue Circuit Court for further proceedings.

LAMBERT, C.J., COOPER, GRAVES and JOHNSTONE, J.J., concur.

STUMBO, J., concurs, in part, however, dissents from the majority opinion as to the admissibility of Sprowls' statement and the decision to overrule *Peyton v. Commonwealth,* Ky., 931 S.W.2d 451 (1996).

KELLER, J., concurs in a separate opinion in which JOHNSTONE, J., joins and STUMBO, J., joins as to the significance of KRS 610.200.

WINTERSHEIMER, J., concurs with the affirmation of the convictions of Sprowls and Weathers but respectfully dissents from the reversal of the Murphy conviction because he disagrees with the *Bruton* analysis found in the opinion.

KELLER, Justice, concurring.

Although I agree with the majority's conclusions, I write separately to clarify my interpretation of the significance of KRS 610.200 and to express my opinion that in a case where a juvenile defendant properly challenges the voluntariness of his or her confession, trial courts should consider an investigating officer's failure to comply with KRS 610.200 as evidence relevant to the voluntariness inquiry.

I agree with the majority that a police officer's violation of the parental notification provisions of KRS 610.200 does not require a court to automatically suppress a juvenile defendant's incriminating statements. I must emphasize, however, that these provisions are mandatory requirements[1] which are inherently intertwined with questions concerning the voluntariness of a juvenile's incriminating statements. This Court should not render those provisions moot by allowing officers to ignore them with impunity. Accordingly, I believe trial courts should consider police authorities' compliance with the pro-

visions of KRS 610.200 as an important variable in determining whether a juvenile's confession was given voluntarily.

In *In re Gault*,[2] the United States Supreme Court emphasized "that admissions and confessions of juveniles require special caution"[3] because "authoritative opinion has cast formidable doubt upon the reliability and trustworthiness of 'confessions' by children."[4] In accordance with its concerns, the *Gault* Court concluded "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or adolescent fantasy, fright, or despair."[5]

The Kentucky General Assembly itself has recognized that juveniles accused with crimes are different from their adult counterparts and has demonstrated concern for "the protection of the rights of accused juveniles when they come in contact with our law enforcement agencies"[6] by adopting measures, such as KRS 610.200, to protect juveniles who have been accused of crimes. In my opinion, the courts of the Commonwealth should examine voluntariness issues relating to juvenile defendants with an eye towards protective measures such as KRS 610.200 and the policy judg-

---

1. *See Davidson v. Commonwealth,* Ky.App., 613 S.W.2d 431 (1981):

   The appellee argues that the statutory language of [KRS 610.200] is directory rather than mandatory and that Officer Cissell substantially complied with the procedure. We cannot agree. The statute specifically states that "the officer *shall immediately* notify" the parent or guardian of the details of the arrest. The fact that the legislature when into such detail in prescribing the steps that should be taken in detaining a juvenile mitigates against the directory argument.
   *Id.*

2. 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

3. *Id.* at 387 U.S. at 45, 87 S.Ct. 1428, 18 L.Ed.2d at 556. *See also Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948).

4. *In re Gault, supra* note 2 at 387 U.S. at 52, 87 S.Ct. 1428, 18 L.Ed.2d at 559–60.

5. *Id.* at 387 U.S. at 55, 87 S.Ct. 1428, 18 L.Ed.2d at 561.

6. *Davidson v. Commonwealth, supra* note 1 at 431.

ments upon which such measures are based.

JOHNSTONE, J., joins. Although dissenting from the majority's result, STUMBO, J., joins as to the significance of KRS 610.200.