**Stephen Robert ARNOLD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2005–SC–0147–MR.**

Supreme Court of Kentucky.

May 18, 2006.

---

Emily Holt Rhorer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Attorneys for Appellant.

Gregory D. Stumbo, Attorney General, James Havey, Assistant Attorney General, Office of Attorney General, Frankfort, Attorney for Appellee.

Opinion of the Court by Justice GRAVES.

A jury of the Fayette Circuit Court convicted Appellant, Stephen Robert Arnold, of First Degree Assault and First Degree Unlawful Imprisonment. For these crimes, Appellant was sentenced to a total of twenty-three years imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). For the reasons set forth herein, we affirm Appellant's convictions.

At approximately 8:00 a.m. on the morning of September 12, 2003, an employee of the Kroger grocery store chain was making a monthly visit to a store location in Lexington, Kentucky. As the employee exited her car, Appellant unexpectedly approached the employee from behind and spun her around. The employee's keys were thrown and she testified that she was so shocked that she did not know what was happening. Appellant then raised a hammer into the air and tried to hit her with it. After missing once, Appellant struck the victim in the head with the hammer. Appellant and the victim then struggled with each other. Eventually, the victim managed to grab or knock the hammer away from Appellant, and he ran away. By all accounts, the victim was a total stranger to Appellant.

Appellant was captured shortly after the crime, hiding in bushes nearby. Prior to trial, his attorney filed written notice, pursuant to RCr 7.24(3)(B)(i), that Appellant "may introduce evidence of mental illness or defect" at trial. After notice was given by Appellant, both parties requested and obtained separate experts who conducted mental examinations of Appellant. At trial, Appellant's attorney argued voluntary intoxication as a defense. He claimed that consumption of large amounts of alcohol and drugs that day caused Appellant to "blackout" any memory of the events.

Psychologist, Dr. Peter Schilling, testified on Appellant's behalf, opining that Appellant was an alcoholic and that his memory loss was indeed "consistent with an alcohol induced blackout." Dr. Schilling explained that "blackouts" in alcoholics are not equivalent to "passing out," but rather a phenomenon where the alcoholic continues to perform everyday behaviors, but with extremely impaired cognitive function and no memory of the events. Dr. Schilling also concluded that Appellant suffered an overall impairment in his abstract reasoning abilities, and that alcohol intoxication further exacerbated this condition.

The Commonwealth called its own expert, Dr. Steven Simon, in rebuttal. Dr. Simon testified that while Appellant exhibited traits that were consistent with alcohol abuse, he "was capable of bearing criminal responsibility" for his actions. Dr. Simon disputed Dr. Schilling's conclusion that Appellant suffered impaired abstract reasoning abilities, but rather he found Appellant to have a possible antisocial personality disorder and significant anger control problems. He further testified that while the "blackout" phenomenon in alcoholics does exist, he was suspicious of Appellant's claim since Appellant was able to remember events occurring directly before and directly after the assault.

Appellant was convicted by jury of First Degree Assault and First Degree Unlawful Imprisonment. Appellant alleges several errors which entitle him to a new trial. For the reasons set forth herein, we affirm Appellant's convictions.

█ Appellant first contends the trial court erred when it permitted the Commonwealth to present improper rebuttal testimony from its expert witness, Dr. Simon. Appellant claims that Dr. Simon's testimony was outside the scope of the testimony permitted by RCr 7.24(3)(B)(ii). RCr 7.24(3)(B)(ii) states, in pertinent part, that the Commonwealth is not permitted to introduce testimony by an expert which is based upon statements made by the defendant "in the course of any [mental] examination," nor may the Commonwealth's expert introduce the "fruits" of any such statements into evidence "*except upon an issue regarding mental condition on which the defendant has introduced testimony.*" *Id.* (emphasis added).

"The admission of rebuttal testimony is largely a matter of judicial discretion." *Stopher v. Commonwealth,* 57 S.W.3d 787, 799 (Ky.2001). The only mental conditions on which Appellant claims he introduced testimony were voluntary intoxication[1] and abstract reasoning ability. Yet, Appellant argues, the Commonwealth exceeded the permissible scope of these issues by introducing testimony regarding his overall mental condition.

█ Upon review, we believe Dr. Simon's rebuttal testimony was well within the trial court's discretion and the bounds erected by RCr 7.24(3)(B)(ii). In this case, the jury was instructed upon intentional conduct as an element of both first degree and second degree assault.[2] KRS 508.010, KRS 508.020. Voluntary intoxication is a complete defense to crimes requiring intentional conduct. *See McGuire v. Commonwealth,* 885 S.W.2d 931, 934 (Ky.1994) ("Voluntary intoxication does not negate culpability for a crime requiring a culpable mental state of wantonness or recklessness, but it does negate specific intent."). When proved, intoxication, whether voluntary or involuntary, "causes the defendant's mental state to equate with insanity." *Id.*

█ Once evidence is introduced to prove the presence of a legitimate defense

---

1. Appellant concedes in his brief that voluntary intoxication is a mental condition within the confines of RCr 7.24(3)(B)(ii). Pursuant to the plain language therein, we agree. RCr 7.24(3)(B)(i) ("expert testimony relating to a mental disease or defect or any other mental condition of the defendant *bearing upon the issue of his or her guilt or punishment*") (emphasis added); *see also Stanford v. Commonwealth,* 793 S.W.2d 112, 115 (Ky.1990) (defi-

nition of mental illness as it is defined in KRS 504.060(6) is broad enough to include the defense of extreme emotional disturbance).

2. These crimes also may be proved by showing wanton conduct. KRS 508.010, KRS 508.020. In this case, the jury was instructed on both the intentional and the wanton prongs of these crimes.

(in this case, voluntary intoxication), the Commonwealth assumes the burden of proving its absence. *Coffey v. Messer,* 945 S.W.2d 944, 945–46 (Ky.1997) (citing *Gall v. Commonwealth,* 607 S.W.2d 97, 109 (Ky. 1980), *overruled on other grounds by, Payne v. Commonwealth,* 623 S.W.2d 867 (Ky.1981) and *Matthews v. Commonwealth,* 709 S.W.2d 414, 421 (Ky.1985)). The Commonwealth's duty and right of rebuttal when the defendant introduces evidence which may reduce his criminal culpability for a particular crime is expressly embraced and codified within the plain language of RCr 7.24(3)(B)(ii). *See Bishop v. Caudill,* 118 S.W.3d 159, 164 (Ky.2003). Indeed, in *Bishop v. Caudill, supra,* we explained the policy underlying the rule as follows:

> The issue of whether a defendant is criminally responsible for the offense with which he is charged is a fact for the jury to decide. Accordingly, the Commonwealth must have the right to rebut this position, a right which necessarily includes obtaining its own independent examination of the defendant. Since the results of the Commonwealth's examination are admissible only to rebut the mental health evidence introduced by the defense, Appellant can preclude introduction of the Commonwealth's evidence by declining to assert such evidence on his own behalf.

*Id.* Thus, in cases where evidence of a mental condition is introduced by the defense, the Commonwealth's testimony pursuant to RCr 7.24(3)(B)(ii) is confined to only those rules which regulate the proper scope and extent of rebuttal testimony.

The traditional right of rebuttal has been defined to encompass not only disputing the facts and/or conclusions submitted by the defendant, but also extends to offering one's own evidence "which tends to counteract or overcome the legal effect of the evidence for the adverse party." *Houser v. Coursey,* 310 Ky. 625, 221 S.W.2d 432 (1949) (citation omitted); *see also, Dowell v. Bivins,* 586 S.W.2d 297, 300 (Ky.App.1979). In this case, Appellant argued that a combination of voluntary intoxication and impaired abstract reasoning ability caused him to not understand the nature of his actions the morning he assaulted the victim. The Commonwealth properly rebutted this premise by disputing (1) the likelihood that Appellant suffered an alcohol induced "blackout;" [3] and (2) the existence of impaired abstract reasoning ability. The Commonwealth further offered evidence which counteracted the defendant's defense (possible antisocial personality disorder in combination with anger control issues). Such evidence is consistent with the scope of proper rebuttal testimony and therefore, was not outside the scope of testimony permitted by RCr 7.24(3)(B)(ii).

■ Appellant next argues that the following colloquy by the Commonwealth during closing argument demanded the trial court grant his motion for mistrial:

> It's bizarre. This is so bizarre. This is not normal behavior. But that's why he's sitting over here. He's not the normal one. And that's why you all are sitting there. You are. Violent crimes don't make sense. And you can't always make sense out of it. That why we have this [holding up a book], the Criminal

---

**3.** While conceding that the phenomenon of alcohol induced blackouts does exist in alcoholics, the Commonwealth's expert was suspicious of Appellant's claim in this case because his memory conveniently lapsed right before the crime was commenced and recurred immediately after the crime was completed. On cross-examination, Appellant's expert conceded that the timing of Appellant's purported blackout could be suspect.

Law of Kentucky. And no matter how bizarre it is, that's why we have them. We have the laws to protect the normal people, the law-abiding people, from the ones who do the bizarre, violent, not-normal behavior.

Appellant contends this argument improperly suggests that Appellant is abnormal and should be convicted for that reason. The Commonwealth disagrees, arguing that in its proper context, this colloquy simply responds to arguments made by Appellant's attorney. Notably, Appellant's attorney argued that Appellant's behavior was "bizarre," could not have been the product of someone able to control himself, and that "[t]he only person who acts like that in [a] Kroger parking lot—there's something seriously wrong with their head." In context, the Commonwealth contends that the prosecutor's argument does not imply that Appellant should be convicted because he is abnormal, but rather he should be convicted because his behavior violated the law. After reviewing the record, we agree with the Commonwealth that the prosecutor's colloquy did not require a mistrial. *Gosser v. Commonwealth*, 31 S.W.3d 897, 906 (Ky.2000) (mistrial should be declared when "the ends of substantial justice cannot be attained without discontinuing the trial").

Appellant next argues that the prosecutor misled the jury and obfuscated the true light of the evidence. While admitting that these alleged misstatements were either (1) unpreserved; or (2) corrected by the trial court at the time of Appellant's objection, Appellant contends that these errors exacerbated the impact and prejudicial nature of the alleged prosecutorial misconduct cited above. Upon review, we disagree and find no reversible error, either individually or in accumulation.

Appellant argues the trial court erred when it overruled his motion for a direct-ed verdict on the charge of unlawful imprisonment. He claims his conviction of unlawful imprisonment was precluded by KRS 509.050. KRS 509.050, states in pertinent part, "A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose."

The application of the above statute is determined as a matter of law. *Calloway v. Commonwealth*, 550 S.W.2d 501, 502–03 (Ky.1977). In *Murphy v. Commonwealth*, 50 S.W.3d 173 (Ky.2001), we explained:

A three-part test must be satisfied before the exemption is applicable. First, the criminal purpose must be the commission of an offense defined outside Chapter 509; second, the interference with the victim's liberty must occur immediately with and incidental to the commission of the underlying offense; and finally, the interference with the victim's liberty must not exceed that which is normally incidental to the commission of the underlying offense.

*Id.* at 180. "The kidnapping exemption statute is to be strictly construed and the burden is upon a defendant to show that it should apply." *Id.* The trial court's decision will not be disturbed unless there is an abuse of discretion. *Id.*

Upon review, we find no abuse of discretion in this case. Several witnesses testified regarding the scuffle. According to this testimony, Appellant placed the victim in a "headlock" and struck her with

the hammer. After striking the victim, Appellant began dragging the victim away from her vehicle. Shortly thereafter, Appellant dropped the victim and ran away, but only at the point when the victim managed to grab or knock the hammer away.

We agree with the Commonwealth that these facts do not unequivocally indicate that Appellant's only criminal purpose was the commission of an offense defined outside Chapter 509 (namely, assault). Additional evidence indicated that duct tape, bungee cords and a tarp were found in Appellant's nearby vehicle. Thus, as well as assault, Appellant could very well have had a separate intent to abduct or hold the victim against her will (offenses which are defined within Chapter 509).

■ We also cannot conclusively determine that Appellant's dragging of the victim was "incidental" to the commission of the assault in this instance. The facts indicate that the victim was struck with the hammer prior to her being dragged by Appellant. In light of these facts, it is not unreasonable to conclude that the assault was essentially accomplished prior to the point when Appellant started to drag the victim away from her vehicle. Thus, for all the reasons discussed herein, we find the trial court did not abuse its discretion when it overruled Appellant's motion for a directed verdict on the charge of unlawful imprisonment pursuant to KRS 509.050.

■ Appellant next contends the trial court erred when it overruled his motion for a directed verdict on the charge of first degree assault. He argues that the evidence was not sufficient as a matter of law to establish that the victim suffered serious physical injury, an element of the offense. KRS 508.010. KRS 500.080(15) defines the term as follows:

"Serious physical injury" means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.

In this case, the victim was hit on the head with a hammer. The blow caused the victim to suffer a concussion and loss of blood. She needed five staples to close the wound to her head and the injury caused the victim to be substantially incapacitated for two weeks. Fifteen months after the attack, the victim continued to suffer periodic vertigo and/or dizziness when getting up, moving her head, and reaching her arms over her head. The assault caused a permanent dent in the victim's head where hair does not grow properly. The victim also testified that while she is still able to work, she has had to make several adjustments to avoid making the movements which trigger her dizziness and vertigo. The victim's family doctor confirmed her injuries, stating that vertigo was a neurological condition of the middle ear and/or brain that is consistent with a blow to the head. The physician further testified that since the victim's symptoms of vertigo and dizziness had not diminished or ceased within six months of the injury, the condition was likely permanent. When considered in its totality, we agree with the Commonwealth that such evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the victim suffered "serious physical injury" as it is defined in KRS 500.080(15). *See Parson v. Commonwealth*, 144 S.W.3d 775, 786–87 (Ky.2004) (prolonged headaches, numbness, and neck pain were sufficient to constitute "serious physical injury" pursuant to KRS 500.080(15)). Accordingly, we find no error by the trial court.

Finally, Appellant argues the trial court erred to his substantial prejudice when it failed to strike Juror # 618 for cause. Upon review, we find no abuse of discretion by the trial court.

During voir dire, Appellant's counsel asked the venire panel whether they would have difficulty acquitting Appellant if they found that he committed the assault, but was so voluntarily intoxicated that he did not know what he was doing. Juror # 618 responded affirmatively, stating "I'm having a hard time getting past the voluntary intoxication in this case. Wanton conduct means to me like driving a car when you're intoxicated. I'm having a hard time getting past that." The trial court responded that voluntary intoxication does not negate wanton conduct and that voluntary intoxication must rise to a certain level to negate intentional conduct. Juror # 618 responded, "I understand. I understand. I'm not sure what the level is to where he doesn't know what he's doing. I'm confused by the voir dire."

The trial court asked Juror # 618 if he could set aside his personal bias and follow the instructions, to which Juror # 618 replied, "I don't know. I don't know without seeing the instruction." Appellant's counsel then asked, hypothetically, that whatever the standard is, if it was met at the end of the day, would he still have reservations about rendering a not guilty verdict. To this, Juror # 618 stated, "I guess the fairest thing for me to tell you is that he would have to be pretty falling down for me to do that at that point." The trial judge told Juror # 618 that his response was fair and that the level of intoxication which causes one to not know what he is doing is a question of fact for the jury to find.

At this point, Appellant asked that Juror # 618 be struck for cause due to his statement that Appellant would have to be "pretty falling down" drunk before he could make a finding of voluntary intoxication. The trial court overruled Appellant's motion, stating that Juror # 618's response was within the jury's discretion, and that Juror # 618 adequately indicated that he was able to follow the trial court's instructions.

"This Court has long recognized that a determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Pendleton v. Commonwealth,* 83 S.W.3d 522, 527 (Ky.2002) (quotation and citation omitted). In hindsight, we agree that reasonable minds could differ as to whether the trial court should have struck this venire panel member for cause. However, we do not believe the trial court's determination rises to the level of abuse of discretion. Accordingly, we find no error.

In any event, this venireman did not participate as a juror at trial, as Appellant used one of his preemptory challenges to strike him. Since Appellant does not allege that use of a preemptory challenge in this instance somehow deprived him of his right to an impartial jury (other than to simply state that he would have used the preemptory on someone else), then any error must be deemed harmless. *Morgan v. Commonwealth,* 189 S.W.3d 99, 120 (Ky. 2006), (Rehearing denied May 18, 2006).

The judgment of the Fayette Circuit Court is affirmed.

All concur.