Shirley PEYTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 95–SC–397–TG.

Supreme Court of Kentucky.

Sept. 26, 1996.

**452**

Rebecca Murrell, Shepherdsville, for appellant.

A.B. Chandler, III, Attorney General, Vickie L. Wise, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

STUMBO, Justice.

Shirley Peyton was convicted of two counts of trafficking in a schedule II controlled substance, second or subsequent offense; one count of persistent felony offender (PFO), first degree; and one count of possession of a handgun by a convicted felon. She received a ten-year sentence on each of the trafficking charges, to run consecutively with one another; a 30–year sentence on the PFO I charge, to run concurrently with the trafficking sentences; and a one-year sentence on the possession of a handgun charge, which is running consecutively with the other charges. Her total sentence is thirty-one years. She appeals to this Court as a matter of right. Appellant presents seven arguments for reversal, not all of which will be discussed in this opinion.

Appellant first contends that her Sixth and Fourteenth Amendment rights to due process were violated because of the trial court's noncompliance with the terms of RCr 8.30. The facts at issue concern the representation of Appellant and her co-defendant, Tony Knott, by the same trial counsel. Knott was charged with two counts of complicity to trafficking in a schedule II narcotic, which referred to the two trafficking counts Appellant faced. Appellant and Knott lived together in Appellant's home, along with her two sons and a friend of Appellant.

On or about March 12, 1991, Eric Basham, an acquaintance of both Appellant and Knott, arrived at the residence of Chris Barley, also an acquaintance of Appellant, to trade some cocaine he had earlier obtained from Appellant to Barley for seventy-five hits of LSD. However, once inside the trailer, Basham found the police in the process of executing a search warrant. As he was intoxicated, Basham was arrested, and the police found cocaine lying on the front seat of his truck. Basham told the police that he was conducting the trade on behalf of Appellant—a statement which served as the basis for a search warrant for Appellant's property. Basham also gave a later statement, and he testified at trial for the Commonwealth in fulfillment of a deal. Basham was only charged with alcohol intoxication.

The search warrant was obtained and executed later that night and into the early hours of the morning. A small amount of marijuana and a .357 magnum handgun were found in the nightstand next to the bed shared by Appellant and Knott. Cocaine, contained within a bottle labeled "Binge Buster," was found outside of the residence, and was not actually on Appellant's property. The bottle was wrapped in a towel, and was either concealed beneath a cooler or located some distance from the cooler, depending on which police officer's testimony is considered. Three other "Binge Buster" bottles were found in the closet of Appellant's bedroom. Those bottles were seized pursuant to a separate search warrant obtained by police a day or two later. At some point during the course of this first search, Appellant's older, teenage son went outside, ostensibly to chain up or to quiet the pit bull dogs that Appellant kept, although no one testified as to his activities during this absence from the home.

At trial, Basham testified that he had gone to Appellant's home earlier in the evening in question and that Appellant had directed her older son to go outside and to bring her the drugs, which she then gave to Basham. Basham stated that he then proceeded to Barley's trailer in order to make the exchange for Appellant, when he encountered the police. Appellant's testimony at trial was, in essence, a total denial of anything beyond the

fact that Basham was at her home on the night in question while she and Knott watched a videotape. While Knott did not take the stand, the opening statement given by counsel contended his complete innocence. Knott was subsequently acquitted.

Appellant asserts that she was prejudiced by her counsel's inability to cross-examine witnesses as to her co-defendant's drug use and trafficking, his access to Appellant's belongings—such as the "Binge Buster" bottles in her closet—or his habit of going to the location at which the cocaine was found. Appellant contends that such questions would have tended to exonerate her at the expense of Knott, and notes that Knott, as a resident of the home, had the same access that Appellant had to the home and its contents, and that he, likewise, had the same right of access as Appellant to the location where the drugs were found. Appellant adds that Knott's charges carried the same penalties as her trafficking charges, and points to the disparity in verdicts as an indication of the prejudice that ensued from dual representation. Appellant concludes that such representation denied her of her constitutional right to effective assistance of counsel.

The Commonwealth, on the other hand, emphasizes the nature of the defense presented at trial. Complete denial of all wrongdoing, it contends, is inconsistent with the focus Appellant now puts on counsel's lack of effort to cast Knott as the possessor of the drugs. The Commonwealth argues that because the home belonged to Appellant, it was natural for the emphasis of the investigation and subsequent prosecution to be on Appellant. The Commonwealth concludes that since the defense was the same for both defendants, there was no prejudice.

We, however, do not need to address either Appellant's or the Commonwealth's arguments relating to prejudice and, likewise, do not even reach this issue of whether or not prejudice actually—or even could have possibly—occurred. Instead, we hold today that noncompliance with the provisions of RCr 8.30 is presumptively prejudicial, and warrants reversal in this matter. The pertinent part of RCr 8.30(1) prohibits dual representation of persons charged with the same or related offenses unless:

(a) the judge of the court in which the proceeding is being held explains to the defendant or defendants the possibility of a conflict of interests on the part of the attorney in that what may be or seem to be the best interests of one client may not be to the best interests of another, and (b) each defendant in the proceeding executes and causes to be entered in the record a statement that the possibility of a conflict of interests on the part of the attorney has been explained to him by the court and that he nevertheless desires to be represented by the same attorney.

Appellant and the Commonwealth agree that there is no evidence in the record to indicate that Appellant and her co-defendant were given the notice of potential conflict required by this rule, or that a waiver of dual representation was entered. Thus, our evaluation of this issue ends at such a finding, notwithstanding that both sides also agree that mere lack of compliance with the rule is insufficient grounds for reversal.

We acknowledge that, up until now, the standard to be followed in a case such as this was explicated in our decision in *Commonwealth v. Holder*, Ky., 705 S.W.2d 907, 909 (1986):

When, as here, the trial court failed to comply with the simple requirements of RCr 8.30 and when, as here, the record demonstrates a conflict of interest between the respondents which could well have prejudiced the dispositions of their cases, the judgment of conviction must be set aside.

Upon a finding that the trial court failed to comply with the terms of RCr 8.30, the question remained whether there existed a real conflict of interest between the defendants, which necessitated a review of the facts. *Id.* at 908–909. Other of our decisions which interpreted this rule concluded that noncompliance with RCr 8.30 merely propped the door open for a case-by-case evaluation to determine if the defendant had been harmed by such a violation. *See, e.g., Conn v. Commonwealth*, Ky., 791 S.W.2d 723 (1990); *Smith v. Commonwealth*, Ky., 669 S.W.2d

527 (1984). Our decision today, however, closes shut that door.

In so holding, this Court relinquishes its role as the soothsayer of such cases, auguring as to whether or not prejudice did, or could have, resulted in a particular instance. In fact, although we hold for Appellant in this matter, it is precisely certain of the types of arguments advanced by Appellant herein which led us to our decision to change the state of our law with regard to RCr 8.30. Mere conjecture as to what counsel would have done, or as to what the co-defendant, or other witnesses, would have testified, but for the dual representation, does not afford this Court with that level of proof—namely, that above mere speculation—necessary in order to conduct a meaningful evaluation of the possibility, or existence, of prejudice in such a matter. Moreover, there may be, on some occasions, records so lacking as to make any just and accurate determination of this issue a virtual impossibility. Justice cannot be administered with crystal balls and tea leaves.

Rather, a better course of conduct in the disposition of this dual representation issue is to formulate a bright line rule whereby if the terms of RCr 8.30 are not followed, prejudice will be presumed. Our decision today reinstates, as good and valid law, *Trulock v. Commonwealth*, Ky.App., 620 S.W.2d 329 (1981), which this Court overruled in *Smith, supra* at 530. The *Trulock* court concluded that the language of RCr 8.30 eliminated any case-by-case determination of prejudice resulting from noncompliance with the rule, and specifically stated: "we cannot say that the language of the rule ... permits us to determine whether a failure to comply with RCr 8.30 was not prejudicial." *Id.* at 330. While we had previously found the reasoning of the Court of Appeals in *Trulock*, and, in particular, that court's interpretation of the language of RCr 8.30, to be unsound, and the error in that case to be harmless, *Smith, supra* at 530; *see also Holder, supra* at 908, we now conclude that the *Trulock* court was correct to hold that "failure to comply with [RCr 8.30] may never be harmless error." *Smith, supra* at 530; *see also Brock v. Commonwealth*, Ky.App., 627 S.W.2d 42, 44 (1982) (emphasis added) ("RCr 8.30 prohibits

such dual representation *unless* the defendant executes a waiver indicating that the possibility and problems of conflicts of interest have been explained to him by the court and that he nevertheless desires to be represented by the same attorney."). Therefore, the judgment of conviction must be reversed.

The next issue we will address is whether the trial court erred in denying Appellant the opportunity to impeach Basham with his prior statements. It does not appear that this issue is preserved for our review. While there is an in-chambers discussion of the use of unsworn prior statements for impeachment purposes, it ends inconclusively with no definitive ruling from the trial court. A review of the cross-examination of Basham makes it clear that counsel was able to bring out the fact that this witness had made earlier statements that were inconsistent with his trial testimony on direct, as well as what those inconsistencies were. As we are reversing on other grounds, we will simply refer counsel to our most recent case regarding the admissibility of prior inconsistent statements, *Porter v. Commonwealth*, Ky., 892 S.W.2d 594 (1995), should the issue arise again during retrial.

Appellant next contends that she cannot properly be sentenced as both a second or subsequent offense trafficker in controlled substances and a first-degree felony offender. She cites as authority for this proposition *Dawson v. Commonwealth*, Ky., 756 S.W.2d 935 (1988). In that case, the defendant was sentenced to ten years on a conviction for possession of a schedule II controlled substance—which was enhanced to 20 years by a PFO conviction—in addition to a ten-year sentence for trafficking in a non-controlled substance. Fines of ten thousand dollars were imposed by the jury on each charge as well. The trial court ran the two sentences consecutively, but vacated the fine imposed on the enhanced charge. On appeal, we held:

> [Dawson's] crime of possession of a Schedule II narcotic, second offense, subsequently enhanced, was a Class C felony. PFO enhancement elevated the possession conviction to a Class B felony for which the

maximum penalty is 20 years. This matter must be remanded for resentencing for all three offenses to a maximum term of 20 years.

The trial judge correctly determined that the $10,000 originally assessed by the jury on the possession of talwin conviction no longer applied once the sentence was enhanced under the PFO statute. The prosecution elected to seek the penalties under the PFO statute rather than KRS 218A.990. They cannot select penalties under both statutes, absent a clear indication by the statutes.

Dawson can be sentenced to ten years for possession [subsequent offense] which may be enhanced to 20 years because of his PFO conviction. His ten-year sentence for trafficking should be run concurrently with the first sentence of imprisonment. The $10,000 fine which was assessed with the trafficking charge, which was not enhanced, remains in effect.

*Id.,* at 937.

■ Appellant herein contends that the Commonwealth should have been required to elect whether it was prosecuting her as a second or subsequent offense trafficker, or as a PFO. The Commonwealth argues that a review of the trial proceedings clearly reveals that, while there may have been no formal pleading indicating an election or no such election requested by defense counsel, the practical effect of the way in which the evidence was presented and the trial structured did, in fact, effect an election. We note that Appellant was convicted of two separate trafficking counts, which occurred on different days: March 12, 1991, and March 13, 1991. The PFO conviction was grounded upon the March 13, 1991, trafficking charge. From the record, it is evident that Appellant had been convicted of a number of felonies in preceding years, many of which were trafficking charges, that could have served as a basis for conviction of a second or subsequent offense.

By agreement with counsel for Appellant, the jury instructions relating to the trafficking charges did not require a finding that the offenses were other than first offenses. These instructions simply required a finding of guilt or innocence. Then, upon a finding of guilt, the jury was asked to determine whether Appellant was a PFO. It was only after Appellant had been found guilty of both the trafficking offenses and the PFO charges that the jury was informed as to the range of penalties defined and submitted for its deliberation, and also that a stipulation had been entered that the trafficking offenses were subsequent offenses. We find no fault with this procedure, especially since it has the virtue of lessening the risk of undue prejudice toward the defendant during the guilt phase of his or her trafficking charge caused by informing the jury that the defendant had previously been convicted of precisely the same charge. Moreover, Appellant herein did not object to this approach. We should add that this Court recently approved the use of precisely such a trifurcated proceeding in subsequent offense DUI cases. *See, Dedic v. Commonwealth,* Ky., 920 S.W.2d 878 (1996).

■ We do, however, note a sentencing error which we will address in the event the matter arises upon retrial. The trial court sentenced Appellant to ten years on the March 13, 1991, trafficking offense as well as to the enhanced sentence of 30 years on the PFO, albeit concurrently. The PFO statute is applicable to the violation of the Controlled Substance Act, even if the Act is outside the penal code and has its own specific sentencing structure, *Harrison v. Commonwealth,* Ky.App., 842 S.W.2d 531 (1993). However, this Court has held that a trial court could not sentence under both statutes, but could choose one or the other. *Dawson v. Commonwealth,* Ky., 756 S.W.2d 935 (1988).

Appellant has raised other arguments which we have chosen not to address because such matters are unlikely to recur on retrial. For the reasons set forth herein, the conviction is reversed and this matter remanded for a new trial.

STEPHENS, C.J., and BAKER, LAMBERT and KING, JJ., concur.

GRAVES, J., concurs in result only.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the joint representation of Peyton and a co-defendant did not violate her right to due process and a fair trial. The alleged lack of compliance by the trial judge with RCr 8.30 did not substantially or unduly prejudice Peyton.

Although a careful examination of the entire record on appeal indicates there is no document that Peyton and her co-defendant may have been put on notice by the trial judge of the possibility of any conflict of interest or that a waiver was subsequently entered as a result of such advice, it is my view that the absence of such notice or waiver does not automatically constitute reversible error. Therefore, I would not adopt a so-called bright-line rule requiring reversal.

A similar issue was raised in *Smith v. Commonwealth*, Ky., 669 S.W.2d 527 (1984), where the record did not disclose compliance with RCr 8.30(1). In that case, this Court, citing *Mishler v. Commonwealth*, Ky., 556 S.W.2d 676 (1977), stated that the failure to appoint separate counsel for co-defendants is reversible error only where there is a conflict of interest between the defendants. In this case, the record indicates that this issue was not properly preserved for appellate review. RCr 9.22. The record also does not demonstrate a conflict of interest between Peyton and her co-defendant. Consequently, I believe that the apparent failure to comply with the letter of RCr 8.30 is nonprejudicial error.

The rationale of *Smith, supra,* has been subsequently upheld in *White v. Commonwealth*, Ky., 671 S.W.2d 241 (1984), and in *Commonwealth v. Holder*, Ky., 705 S.W.2d 907 (1986).

In this case, Peyton has not demonstrated anything in the record to support her allegation of obvious conflict. Both Peyton and her co-defendant assumed the identical defense, complete denial. Peyton received a fundamentally fair trial. Any error or omission on the part of the trial judge was nonprejudicial and was harmless error.

The adoption of this type of bright-line rule replaces the proper and thoughtful exercise by the trial court of discretion based on contemporaneous or on-the-spot supervision of the legal situation with a kind of automatic robotic system handed down from on high. Every case is now the same and the case-by-case method which should be applied to individual situations has been abandoned.

I would affirm the conviction in all respects because there was no prejudicial error.