Rosalee BREWER, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

Nos. 2004–SC–000741–MR, 2004–SC–001106–TG.

Supreme Court of Kentucky.

Nov. 22, 2006.

Donna L. Boyce, Assistant Public Advocate, Department for Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Michael Harned, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Rosalee Brewer, was convicted by the Owen Circuit Court of one count of engaging in organized crime, KRS 506.120, four counts of trafficking in five or more pounds of marijuana, KRS 218A.1421(4), and four counts of trafficking in eight or more ounces but less than five pounds of marijuana.[1] KRS 218A.1421(3). Appellant was then sentenced to an aggregate term of imprisonment of sixty years. Appellant now appeals her conviction and sentence as a matter of right pursuant to Ky. Const. § 110(2)(b), alleging that the trial court committed several errors, *viz.:* (1) that the trial court erroneously denied her motion for directed verdict of acquittal with respect to the four counts of trafficking in eight or more ounces but less than five pounds of marijuana; (2) that the trial court denied her due process of law when it allowed the Commonwealth to introduce a spiral notebook kept by her co-indictees as such was allegedly hearsay evidence; (3) that she was denied effective assistance of counsel and that her trial counsel labored under an actual conflict of interest by representing her and her co-defendant husband; (4) that the trial court erred by admitting evidence of numerous firearms that were never connected to the underlying offenses; and, (5) that the trial court erred in ordering forfeiture of Appellant's real property, money, firearms, and pickup truck and in denying Appellant's motion to return all firearms seized from the home. For the reasons set forth herein, we affirm Appellant's conviction and sentence.

## FACTS

Acting on information received during an unrelated domestic violence call, Owenton police visited the home of Scott and Beverly Sizemore. There, officers noticed the strong odor of marijuana, and, after confronting Scott Sizemore (Sizemore) on

---

**1.** The original indictment also contained firearms enhancement charges, which were later dropped by the Commonwealth, as well as one count for cultivation of marijuana, for which the jury found Appellant and her husband not guilty.

allegations of selling marijuana and with his consent, the officers conducted a search of the residence. As a result, the officers uncovered several bags of marijuana. Sizemore confessed that he and his wife, Beverly, who is also Appellant's daughter, sold marijuana to family and friends. Sizemore also agreed to cooperate with the officers and told them that the marijuana found at his home had been obtained from his father-in-law, Lee Roy Brewer. Sizemore also mentioned Dale Masden (Masden) as another associate involved in the alleged drug trafficking scheme and who would be returning soon from Mexico with a large shipment of marijuana.

Armed with this information, police then visited Masden's home, which he shared with Jacqueline Sims (Sims). Sims was the only one there when police arrived, and she consented to a search of the residence. This search revealed eighteen to nineteen pounds of bricked marijuana as well as several marijuana plants on the back porch of the home and a small quantity of marijuana in a tin, which Sims said was for "personal use." Detective Boyd of the Owenton Police Department also uncovered a spiral notebook and a calendar.

During questioning, Sims disclosed an ongoing operation whereby a woman named Deborah Gibbs would drive a late 1980s model Oldsmobile into Mexico, where another individual would load up to sixty pounds of marijuana into the modified gas tank of the vehicle so as to avoid detection by United States Customs agents. Masden would accompany her and would usually drive the vehicle containing the drugs back to Kentucky. Allegedly, a Mexican army official would aid the group as they entered back into the United States by helping them through the border checkpoint. After obtaining this information, police contacted United States Customs, which arranged to intercept Gibbs at the border and issued an arrest warrant for Masden, who was later arrested upon his return to Kentucky.

Sims further cooperated with police by wearing a wire to the home of Lee Roy and Rosalee Brewer. Once there, they discussed the arrests of Scott and Beverly Sizemore and the police visit to Sims' home. Sims told the Brewers that the police had confiscated her personal marijuana stash and the plants, but did not tell them that the police had also found the bricked marijuana. The Brewers then gave Sims an ammunition box in which to place the remaining marijuana and gave her directions to bury it off her property.

Based on this information, the police obtained search and arrest warrants for Appellant and her husband. Upon execution of those warrants, the police did not find marijuana or money in the Appellant's home, but did find numerous firearms and a scale and confiscated these items.

When police finally interviewed Masden, he disclosed more information concerning the Brewers and the trafficking operation, prompting a second search warrant to be issued for the Brewers' residence. As a result of this second search, police found two bricks of marijuana and $8100 in cash in a field adjacent to the Appellant's property, as well as a few ounces of marijuana in plastic bags.

On May 5, 2004, the Commonwealth filed a notice that it intended to bring a forfeiture action against certain real and personal property belonging to Appellant. In response, on July 12, 2004, Appellant sought to have the firearms returned to family members. Then on July 19, 2004, the Commonwealth filed a response that intended to seek forfeiture of the firearms pursuant to KRS 218A.410(1)(f), (h), and (j). At an ancillary hearing on September 28, 2004, following Appellant's conviction,

the trial court ordered forfeiture of certain real and personal property, including the firearms, as well as cash obtained from Appellant's residence.

Prior to trial, Sizemore, Sims, Masden and Gibbs entered into plea agreements with the Commonwealth. In exchange for their testimony against Appellant and her husband, Beverly Sizemore and two other witnesses, Linda Chadwell and Rick Swan, the Commonwealth offered to reduce the charges and sentences pending against them. Also, Appellant and her husband signed a waiver of dual representation.

Based on the testimony from the several co-indictees and from evidence obtained during the various searches, Appellant was subsequently convicted on all counts and sentenced to serve sixty years in prison. It is from this conviction and sentence and the court's order of forfeiture of real and personal property that she now appeals.[2]

## ANALYSIS

**1. Appellant's motion for directed verdict of acquittal.**

In her first assignment of error, Appellant alleges the trial court erroneously denied her motion for directed verdict of acquittal. Appellant alleges that the Commonwealth's evidence was insufficient for a jury finding of guilt with regard to the four counts of trafficking in more than eight ounces but less than five pounds of marijuana. Specifically, Appellant contends that she was not at home on the four dates in question when the marijuana was delivered to her residence and that there was no evidence linking her to the four charges for trafficking in more than eight ounces but less than five pounds of marijuana.

*A. Standard of Review*

In ruling on a defendant's motion for directed verdict of acquittal, "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky. 1991). Similarly, the trial court is to assume that all the evidence presented by the Commonwealth is, in fact, true. *Baker v. Commonwealth*, 973 S.W.2d 54 (Ky. 1998). Questions of credibility and the weight to be given to evidence and testimony are issues reserved for determination by the jury. However, if the trial court finds that the evidence is sufficient "to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Benham*, 816 S.W.2d at 187.

This standard applies whether the evidence is direct or circumstantial. "The rule is that if from the totality of the evidence the [court] can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient to allow the case to go to the jury even though it is circumstantial." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4 (Ky.1983). *See also Trowel v. Commonwealth*, 550 S.W.2d 530 (Ky.1977). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187 (citation omitted).

As a reviewing court, we do not reevaluate the evidence but rather consider the trial court's decision "in light of the

---

**2.** The forfeiture issue had initially been appealed to the Court of Appeals. However, the case involving that issue was transferred to this Court for final resolution with Appellant's criminal appeal.

proof presented." *Id.* at 187. Thus, this Court is prohibited from considering these matters on appeal *de novo.* *Commonwealth v. Jones,* 880 S.W.2d 544, 545 (Ky. 1994). "The court acting as an appellate court cannot ... substitute its judgment as to credibility of a witness for that of the trial court and the jury." *Id.*

B. *Sufficiency of the evidence for a jury determination of guilt.*

■ Appellant argues that there was insufficient evidence for a jury to reasonably find she was involved in any way with the drug trafficking charges set forth in the four counts of the indictment for trafficking in more than eight ounces but less than five pounds of marijuana. We disagree.

KRS 218A.1421(1) provides that "[a] person is guilty of trafficking in marijuana when [she] knowingly and unlawfully traffics in marijuana." KRS 218A.010(28) defines "traffic" to include manufacturing, distributing, dispensing, selling, transferring, or possessing with intent to manufacture, distribute, dispense, or sell a controlled substance.

In this case, Sims testified that on four different days, April 20–23, 2004, she delivered anywhere from one pound to three and half pounds of marijuana to the Brewers, utilizing the same method each time—a cooler packed with the drugs, which was exchanged for an empty cooler upon arriving at the Brewers' residence. Further testimony elicited at trial described how Appellant would sometimes receive the profits from the drug sales when her husband, Lee Roy, was not at home, and Appellant would on many occasions count the proceeds from various transactions.

There was also ample evidence that Appellant was more than just a spectator of the alleged scheme, as Sims also testified that Appellant instructed her on how to bury the drugs in containers off her own property. Sims' testimony also revealed that Appellant knew the others involved in the scheme, especially Masden and Gibbs as Appellant speculated that Gibbs was the "snitch" since Gibbs was jealous that Masden was taking over the Mexican importation route.

It could hardly be said that Appellant was ignorant of the trafficking scheme or was not involved in the actual trafficking of the drugs in this case. Drawing all reasonable inferences from the evidence and testimony, Appellant was as involved in the four counts at issue here as she was in the other counts for which the jury also found her guilty and which she does not dispute in this appeal. Considering the evidence in the light most favorable to the Commonwealth, *Benham,* 816 S.W.2d at 187–88, it was not unreasonable for the jury to infer that Appellant was involved in the receipt and distribution of the marijuana that is the subject of the four counts at issue. Thus the trial court did not err in denying Appellant's motion for directed verdict of acquittal with regard to the four counts for trafficking in more than eight ounces but less than five pounds of marijuana. Appellant's conviction with regard to this issue is affirmed.

2. **Admission of co-conspirator's notebook.**

■ Appellant next alleges that the trial court abused its discretion when it allowed the Commonwealth to introduce a notebook that had been kept by Sims and Masden. Appellant characterizes this evidence as hearsay and argues that its admission denied her due process and confrontation rights. We disagree.

Here, the Commonwealth sought to introduce the notebook as a co-conspirator statement pursuant to KRE 801A(b)(5). Appellant then joined the objection of her

co-defendants; however, the Commonwealth contends that the issue is unpreserved for review by this Court because Appellant failed to state with particularity the basis for her objection. The trial court overruled the objection and admitted the notebook into evidence.

The notebook was authenticated by Sims, who testified and verified the information in the notebook as being her handwriting and that of Masden. Sims also testified that the information related to individual shipments of marijuana and identified such by notations indicating weight, quality, and price, as well as the initials of the person receiving each shipment. Masden later testified that he began keeping the "ledger" only after he and Lee Roy Brewer had a disagreement over money.

■ Initially, we must address the Commonwealth's contention that Appellant's arguments regarding the alleged hearsay are unpreserved. In reviewing the record, it becomes clear that the Appellant made her objections known to the court, and the trial court responded by overruling the objection and stating that such would be noted in the record. Although Appellant never stated grounds for her objection, we note that such was not necessary in this case because the trial judge never requested those grounds. RCr 9.22; KRE 103(a). Finding the matter preserved, we must determine whether it was properly admitted.

■ In order to fall within the co-conspirator exception to the hearsay rules, the proponent of the statement must show (1) there was a conspiracy; (2) the defendant was a part of that conspiracy; and (3) the statement was made in furtherance of the conspiracy. *Marshall v. Commonwealth*, 60 S.W.3d 513, 520 (Ky.2001) (citing *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir.1994), *cert. denied*, 513 U.S. 852, 115

S.Ct. 152, 130 L.Ed.2d 91 (1994)). It is important to note here that Appellant was also convicted on charges of engaging in organized crime pursuant to KRS 506.120, which requires a conspiracy of five or more persons. "KRS 506.040 [regarding criminal conspiracy] is distinguishable from KRS 506.120, the criminal syndicate offense, because the former does not require the involvement of five or more persons as does the latter. A conspiracy can result from an agreement between one or more persons, KRS 506.040, or otherwise." *Dishman v. Commonwealth*, 906 S.W.2d 335, 342 (Ky.1995).

■ An appellate court's standard of review for admission of evidence is whether the trial court abused its discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* Applying this test, we find that the trial court did not abuse its discretion in admitting the notebook or the accompanying testimony, as the Commonwealth produced sufficient evidence to show there was a conspiracy, that Appellant was a part of that conspiracy, and that the information documented in the notebook was made in furtherance of the conspiracy.

### 3. Joint representation of Appellant and her co-defendant husband.

■ Appellant claims that she was denied her right to conflict-free counsel when the same attorney represented both Appellant and her husband. Appellant concedes that this issue is not preserved for review, but requests this Court to review the issue because of the trial court's alleged failure to comply with RCr 8.30 and because trial counsel's joint representation resulted in manifest injustice. RCr 10.26; KRE 103(e). Appellant likewise notes that this

issue may be raised for the first time on appeal under *Commonwealth v. Holder,* 705 S.W.2d 907, 909 (Ky.1986). While we agree that Appellant may raise this issue for the first time on appeal, we do not believe that she was prejudiced by being jointly represented in this case.

This issue has been given much treatment over the last twenty-five years. For example, in *Trulock v. Commonwealth,* 620 S.W.2d 329 (Ky.App.1981), the Kentucky Court of Appeals held that RCr 8.30 was structured to eliminate a case by case determination of prejudice resulting from a violation of the rule and that compliance with RCr 8.30 was mandatory. This Court reversed course in *Smith v. Commonwealth,* 669 S.W.2d 527 (Ky.1984), *cited in Holder,* 705 S.W.2d at 908, wherein our predecessors held that an alleged violation of RCr 8.30 may be subject to harmless error review where the record does not support a finding of prejudice or a possibility of prejudice resulting from joint representation.

In *Peyton v. Commonwealth,* 931 S.W.2d 451, 453 (Ky.1996) (Wintersheimer, J., dissenting), this Court again reversed course and held that noncompliance with RCr 8.30 is "presumptively prejudicial." However, five years later in *Murphy v. Commonwealth,* 50 S.W.3d 173 (Ky.2001), this Court reinstated its previous holdings in *Smith* and *Holder, supra,* and held that "the bright line rule established in *Peyton, supra,* 'replaces the proper and thoughtful exercise by the trial court of discretion based on contemporaneous or on-the-spot supervision of the legal situation with a kind of automatic robotic system handed down from on high.'" *Id.* at 183 (quoting *Peyton,* 931 S.W.2d at 456). Further, this Court opined that "a questionable violation, which does not result in any prejudice to the defendant, should not mandate automatic reversal. Such a result defies logic

and ignores the principles of judicial economy." *Id.*

Accordingly, we must determine on the facts of this case whether a violation of RCr 8.30 actually occurred, and if so, whether Appellant suffered prejudice as a result.

Here, Appellant and her husband were arrested on or about April 26, 2004. On April 30, 2004, both defendants signed a waiver of dual representation in Owen District Court. Then on May 4, 2004, the grand jury indicted Appellant and her husband, charging them with the same offenses. At arraignment, the circuit judge instructed joint defense counsel that Appellant and her husband would have to sign a new waiver of dual representation now that their case was in circuit court. The circuit court judge engaged in a short colloquy, first with Appellant's husband, then with her:

CT: [Y]ou all went over this in District Court. You have now gone back over it with Mr. Smith here today, and what these cases are about, it may be sometime in cases where you have two defendants involved in a case that they have something about the case about where they disagree, particularly where you might be wanting to point the finger at her or her point it at you. Now, you know a lot more about your case or what's going on with it than I do or anybody else in this room, and what I need to know is are you comfortable having Mr. Smith represent both you and Mrs. Brewer as well?

Lee Roy: Yes sir.

CT: No problem at all in your mind?

Lee Roy: No.

CT: Thank you. And ma'am, Mrs. Brewer, you understand also, you heard what I just said about this and understand the problem might be where you would feel one way about something or

want to point a finger at him or he want to point it at you, and knowing what you know about your case, do you see any problem at all with Mr. Smith representing both you and Mr. Brewer?

App: None whatsoever. None whatsoever.

CT: Are you all husband and wife?

Lee Roy: Yes.

CT: Okay, that's fine. Based on the statements you have made here today then I will approve the waiver of dual representation and we will proceed from there.

RCr 8.30(1) requires the trial judge to explain the possibility of a conflict of interest to the extent that what may be in the interests of one defendant may not be in the interest of the other. The rule also requires a written waiver, which states that the possibility of a conflict of interest is understood and that the defendant still desires joint representation, to be signed by the defendants to be jointly represented.

This Court succinctly explained RCr 8.30 in *Jackson v. Commonwealth*, 3 S.W.3d 718, 721 (Ky.1999):

[T]he purpose of the rule ... is to protect a criminal defendant's right to separate representation. The rule effectuates this purpose by requiring that the trial court inform jointly-represented defendants about the potential for prejudice to their cases that may arise from the conflict of interest inherent in dual representation. The rule further protects a defendant by requiring him to waive his right to separate representation in writing.

RCr. 8.30 prohibits dual representation of criminal defendants "unless the defendant executes a waiver indicating that the possibility and problems of conflicts of interest have been explained to him by the court and that he nevertheless desires to be represented by the same attorney." *Brock v. Commonwealth*, 627 S.W.2d 42, 44 (Ky.App.1981); *see also White v. Commonwealth*, 671 S.W.2d 241, 243 (Ky.1983). In *Brock*, the court articulates that an accused "must" be able to waive the problem of dual representation so long as the waiver is done "knowingly." *Brock*, 627 S.W.2d at 44. However, the court goes on to caution that trial courts "should all but insist on separate counsel, especially where counsel is appointed." *Id.* In the instance at bar, however, Appellant and her husband employed private counsel throughout the proceedings.

The Kentucky Court of Appeals has recently articulated the current understanding of RCr. 8.30 as it pertains to joint representation.

If a criminal defendant is represented by a lawyer who also represents a codefendant, that criminal defendant must be informed of the possible conflict of interest by the trial judge and must sign a waiver of the possible conflict of interest. The failure to do so, however, does not necessitate reversal, but requires a defendant to demonstrate an actual conflict of interest.

*Donatelli v. Commonwealth*, 175 S.W.3d 103, 104 (Ky.App.2005).

▇▇▇ Much as in *Brock, supra,* Appellant here asserts that her cause was prejudiced by conflicts of interest, which arose during the course of the trial. We disagree that any such conflict of interest arose or was present at any time throughout the proceedings and find that Appellant received adequate and capable representation from trial counsel. "A defendant must show a real conflict of interest in order to obtain reversal." *Kirkland v. Commonwealth*, 53 S.W.3d 71, 75 (Ky. 2001).

Appellant was informed of her right to separate counsel under RCr 8.30 both in the district and circuit court pursuant to RCr 8.30(2), and did both knowingly and intelligently waive this right on both occasions, doing so with her "eyes open." *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942); *Hill v. Commonwealth,* 125 S.W.3d 221, 226 (Ky.2004). Moreover, Appellant was duly informed at both levels of the potential for conflicts of interest arising and of her right to receive separate representation. Cognizant of these potentialities and duly informed by both the judge and in separate conference with counsel, Appellant signed a waiver of dual representation at arraignment. *See Holder,* 705 S.W.2d at 909.

Appellant asserts that the colloquy which took place between the trial court judge and Appellant was insufficient to comply with the requirements of RCr 8.30. However, RCr 8.30 does not fashion a requirement of length or word count as to what justifies sufficiency. RCr 8.30(1)(a) simply indicates that the trial court judge should explain to the defendant the possibility of conflicts of interest and that what may be in the best interests for one defendant may not be in the best interest of the other. The manner in which this is to be accomplished is not indicated in the statute. While this Court has previously indicated that a knowing and intelligent waiver has occurred and that a defendant was sufficiently informed of possible conflicts when a colloquy between the judge and co-defendants covered twenty-five (25) pages in the transcript, we are not inclined to make such arbitrary or cumbersome requirements here. *See White,* 671 S.W.2d at 243. We are inclined, however, to restate the rule that whether a trial court judge has upheld his obligations in ensuring that a defendant is informed of possible conflicts of interest under RCr 8.30 will turn on the specific facts and circumstances of the individual case.

Here, Appellant and her husband had previously been informed of the implications of joint representation in district court. Appellant and her husband thereupon signed a waiver. Again at circuit court, Appellant and her husband were brought before the judge and questioned as to whether they were comfortable with joint representation bearing in mind what they had gone over in district court and what they had gone over with their attorney, as well as receiving additional words of caution from the judge at that time. Appellant answered unequivocally that she had no reservations regarding dual representation, and the judge properly approved the waiver. The fact that Appellant signed and attested on the record a waiver of her rights should be given due effect. "If we took all waivers lightly, we would open the flood gates for reversal." *Brock,* 627 S.W.2d at 44.

Clearly, Appellant waived her right of joint representation in full compliance with RCr 8.30. However, even if the requirements of RCr 8.30 had not been satisfied, "failure to comply with RCr 8.30 is harmless error when the record does not show even a possibility of prejudice resulting from joint representation of the accused." *Holder,* 705 S.W.2d at 908. Thus finding no violation, Appellant's conviction is affirmed.

**4. Admission of testimony and photographs regarding firearms seized from members of syndicate.**

■ During the course of the investigation into the alleged drug trafficking syndicate, police seized numerous firearms from the homes of the various members of the syndicate. At trial, photographs of the firearms, accompanied by testimony from the owners of those firearms, were presented. Appellant objected on grounds

that the evidence was highly prejudicial since the Commonwealth was no longer seeking firearms enhancements on the charges. The trial court overruled the objection, finding that the testimony was "admissible for the purpose for which [the prosecutor will] ask later.... [T]hey're relative to the entire scenario that was going on over there, particularly with regard to this residence."

Appellant now argues that the evidence and testimony was not only highly prejudicial but also irrelevant, although she presents the relevancy argument for the first time on appeal. Despite the Commonwealth's contention that the issue is unpreserved for appellate review, we note our previous discussion regarding evidentiary issues and preservation, and we find that Appellant has preserved this issue for review.

Again, the test on appellate review is whether the trial court's decision to admit the photographs and testimony regarding the firearms was an abuse of discretion. *English*, 993 S.W.2d at 945. In determining whether the trial court abused its discretion, we must find that "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

This Court has held that "weapons, which have no relation to the crime, are inadmissible." *Major v. Commonwealth*, 177 S.W.3d 700, 710–11 (Ky.2005) (citing *Gerlaugh v. Commonwealth*, 156 S.W.3d 747, 756 (Ky.2005)). In *Major*, the defendant was charged with the murder of his wife. At his trial, the Commonwealth sought to introduce several firearms owned by the defendant around the time of the murder, but had no evidence actually linking the firearms to the crime. In that case, this Court held that the introduction of weapons without connection to the crime was error. *Id.* at 711.

Here, we have several defendants charged with trafficking marijuana who also happen to own firearms and had those in their residences at the time the police searched the premises. Initially, the Commonwealth sought firearms enhancements on all trafficking charges, but later dropped those charges, stating that "the Commonwealth is dismissing the contention that these crimes were committed while in possession of a firearm." The most logical reason for this would be that the Commonwealth had no evidence to prove the firearms were used in the facilitation of the drug trafficking scheme. When photographs of the firearms seized from the Sims/Masden residence were introduced at trial, Det. Boyd testified on behalf of the Commonwealth that, in his experience, "when inspections or searches are done of residences that involve drug traffickers, weapons are found within the residence[.]" At no point, however, did the Commonwealth show any connection between the firearms seized from the residences and the alleged drug trafficking scheme. Thus, we find it was an abuse of discretion for the trial court to admit evidence of firearms for which no connection to the drug trafficking scheme was shown.

 Although the trial court erred in admitting the testimony and photographs of the firearms, any error in this circumstance was harmless, and this Court will not reverse a judgment based on harmless error. RCr 9.24. Rather, "[o]ur harmless error standard requires 'that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial.'" *Matthews v. Commonwealth*, 163 S.W.3d 11, 27 (Ky.2005) (quoting *Abernathy v. Commonwealth*, 439 S.W.2d 949, 952 (Ky.1969), *overruled on*

*other grounds by Blake v. Commonwealth,* 646 S.W.2d 718 (Ky.1983)).

The Commonwealth introduced ample other evidence from which a reasonable jury could find guilt. We find there is no "substantial possibility that the result would have been any different," *id.,* thus any error in this case was nonprejudicial and harmless.

**5. Forfeiture of Appellant's real and personal property.**

Appellant's final assignment of error concerns the ancillary hearing following her conviction during which the trial court ordered the forfeiture of Appellant's real estate consisting of approximately 3/4 acre, and personal property, including firearms, a 1993 Toyota Tacoma pickup truck, and all money confiscated from her residence, which she shared with her co-defendant husband, Lee Roy Brewer. Appellant contends that the Commonwealth failed to trace the real and personal property to any exchange pursuant to KRS 218A.410(1).

Initially, we note that the forfeiture concerning Appellant's firearms was considered and disposed of in her co-defendant husband's appeal, and thus we will not address that issue here. There we determined that the trial court's order of forfeiture was in error as the Commonwealth failed to meet its initial burden of showing that the firearms were traceable to the exchange for controlled substances. This leaves for consideration whether the forfeiture of Appellant's real estate, vehicle, and money was proper and appropriate under the circumstances of this case.

Furthermore, because KRS 218A.410 states that the enumerated items therein are only "subject to forfeiture," there is an element of discretion on the part of the trial court in ordering those things to be forfeited. To be subject to forfeiture, the Commonwealth has the initial burden of showing by even the slightest of evidence that the property is subject to forfeiture. The trial court has discretion in determining whether the burdens contained in KRS 218A.410 are met as well as discretion in ordering the ultimate forfeiture, under the terms of the statute. *Commonwealth v. Shirley,* 140 S.W.3d 593, 598 (Ky.App. 2004).

**A. Forfeiture of Appellant's Real Estate**

■ KRS 218A.410(1)(j) provides that "[e]verything of value furnished, or intended to be furnished, in exchange for a controlled substance in violation of this chapter, all proceeds, including real and personal property, traceable to the exchange" is subject to forfeiture. KRS 218A.410(1)(k) provides that "[a]ll real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this chapter" is also subject to forfeiture. Inherent in both of these provisions is a threshold requirement that the Commonwealth must show that the real property was either used to facilitate the drug trafficking scheme or that the real property was a proceed of a drug exchange and traceable to the drug trafficking scheme.

In this case, the Commonwealth produced sufficient evidence to support a claim that the real property in question, a 3/4 acre tract of land in Monterey, Kentucky, was used to facilitate the drug trafficking scheme. Appellant's home acted as a base of operations for the directing and financing of the syndicate's activities, including the distribution of marijuana to street level dealers. Although an initial search of Appellant's home revealed no evidence of drug possession or trafficking,

a subsequent search of the real property, and property adjacent to Appellant's property, resulted in the discovery of several pounds of marijuana as well as $8100 in currency. Thus, the trial court did not abuse its discretion in finding the real property to be subject to forfeiture and in ordering the ultimate forfeiture of that real property. Finding no error, the forfeiture of Appellant's real property is affirmed.

### B. Forfeiture of Appellant's vehicle.

██ Pursuant to KRS 218A.410(1)(h), "vehicles ... which are used, or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of [controlled substances in violation of this chapter]" are subject to forfeiture. However, "[n]o conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent." KRS 218A.410(1)(h)(2).

██ "[T]he foregoing statute subjects the motor vehicle to forfeiture on proof that it was used to facilitate the transportation for the purpose of sale or receipt of controlled substances unless the owner ... is able to establish that such use, if any, was without her knowledge or consent." *Osborne v. Commonwealth*, 839 S.W.2d 281, 283 (Ky.1992). In the case at bar, evidence was presented that Mr. Brewer, Appellant's husband and co-defendant here, would utilize their 1993 Toyota Tacoma pick-up truck to pickup currency that were proceeds from the sale of marijuana, and he would also bring currency to distribute to Gibbs and another individual, Vascari, for their transport back to Mexico. The trial court thus had ample evidence from which it could determine, in its discretion, that the vehicle in question was used to facilitate the transportation of

marijuana as part of the overall scheme devised and employed by the various syndicate members. From these facts, the trial court ultimately ordered forfeiture of Appellant's vehicle, and finding no abuse of discretion or error otherwise, we affirm the trial court's order of forfeiture of Appellant's vehicle.

### C. Forfeiture of the currency.

██ KRS 218A.410(1)(j) permits the forfeiture of "[e]verything of value furnished ... in exchange for a controlled substance in violation of this chapter, all proceeds ... traceable to the exchange, and all moneys ... used, or intended to be used to facilitate any violation of this chapter." The statute further provides in subsection (j) that

> [i]t shall be a rebuttable presumption that all moneys, coin, and currency found in close proximity to controlled substances, to drug manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances, are presumed to be forfeitable under this paragraph. The burden of proof shall be on the claimants of personal property to rebut this presumption by clear and convincing evidence.

KRS 218A.410(1)(j).

As we have stated in other cases, "any property subject to forfeiture under (j) must be traceable to the exchange or intended violation." *Osborne*, 839 S.W.2d at 284.

> The Commonwealth may meet its initial burden by producing slight evidence of traceability. Production of such evidence plus proof of close proximity, the weight of which is enhanced by virtue of the presumption, is sufficient to sustain

the forfeiture in the absence of clear and convincing evidence to the contrary.

*Id.*

In this case, the Commonwealth produced evidence that Appellant and her husband offered advice to Sims on how she should go about hiding any marijuana they believed she still had in her possession. They instructed her to place the marijuana and any money in containers off her property. Through that surreptitiously recorded conversation between Sims and the Brewers, police were led to believe that the Brewers may have acted in a similar fashion, thereby prompting the police to obtain a search warrant for a second time to search the Brewer residence. As a result, the police uncovered marijuana wrapped in cellophane, which was placed on the ground and covered by leaves. Several ounces of marijuana were also found in an ammunition box nearby. The police also found $8100 in United States currency inside an Estee Lauder makeup pouch not far from where the marijuana was uncovered.

We find that these facts, coupled with the fact that the Appellant and her husband were both convicted of eight counts of trafficking in marijuana, were sufficient to show that the currency in question was traceable to the exchange for marijuana. The fact that the money was found in close proximity to the drugs "is sufficient to make a *prima facie* case." *Osborne,* 839 S.W.2d at 284. Thus the burden was then shifted to the Appellant to rebut the presumption that the currency should not be forfeited. Appellant failed to convince the trial court otherwise, and finding no abuse of discretion or error in ordering the forfeiture of the currency, we thus affirm.

## CONCLUSION

For the reasons contained herein, we affirm Appellant's conviction and the trial court's order of forfeiture of Appellant's real property, vehicle, and currency. Based on this Court's decision in Appellant's co-defendant's case, however, the forfeiture of Appellant's firearms has been reversed and remanded to the trial court for a determination that the firearms are actually "traceable to the exchange" for controlled substances.

All concur.