# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 17, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000474-MR

DATE June 16, 16 E.M.Growth D.C.

JAMES T. HINMAN II                       APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT

V.           HONORABLE ANDREW C. SELF, JUDGE

NO. 13-CR-00245

COMMONWEALTH OF KENTUCKY             APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING IN PART AND REMANDING

Appellant, James Hinman, appeals from a judgment of the Christian Circuit Court convicting him of second-degree assault and first-degree rape. He was sentenced to imprisonment for 10 years for assault and 40 years for rape, to be served concurrently. On appeal to this Court, Appellant argues that: 1) he was denied a unanimous verdict on the first-degree rape guilt determination; 2) he was denied a unanimous verdict on the first-degree rape sentence determination; 3) he was denied a unanimous verdict on the second-degree assault guilt determination; 4) the trial court erred in failing to grant a directed verdict on the second-degree assault charge; and 5) hearsay and bolstering testimony were improperly admitted into evidence.

For the reasons stated below, we reverse the judgment as to the first-degree rape conviction and remand for a new trial on that charge; and we affirm the conviction and sentence imposed for second-degree assault.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his wife, Lily,[1] married in the fall of 2012. Almost immediately, the relationship began to deteriorate. According to Lily's trial testimony, Appellant became angry on March 12, 2013 after she rejected his sexual advances. He warned Lily that he would teach her to never to reject him again and, for the next two hours, he repeatedly struck her about the face and head with his fists and kicked her legs and torso. At one point, he jumped onto her chest with all his weight. He then removed her clothing, commented on the battered condition of her body, and resumed kicking and hitting her until she passed out. He roused her back to consciousness by shaking her and resumed beating her.

After the attack, according to Lily's testimony, Appellant demanded her assurance that she would not again reject his sexual advances. He then forced Lily to wear a dress belonging to her daughter.[2] He began fondling her and calling her by her daughter's name as he looked at a photograph of her

---

[1]Lily is a pseudonym. Ordinarily, we have used pseudonyms only to protect the anonymity of juveniles. Appellant's wife is not a juvenile but in his brief to this Court, he used this pseudonym and the Commonwealth continued to do so in its brief. We continue the use of this pseudonym to be consistent with the parties' arguments.

[2] Lily's daughter lived with the daughter's father. Lily had two sons living with her and Appellant.

2

daughter. He then initiated vaginal intercourse to which Lily acceded out of fear that she would again be beaten, or even killed.

The next evening, March 13, Appellant told Lily he would not physically hurt her again but that he was not finished punishing her. He took Lily, dressed only in pajamas, outside in freezing weather where he placed a dog collar around her neck and ordered her into the doghouse. He left her there for about an hour before he returned, allowing her into the residence only after she agreed to his demand to do everything her "master" told her to do.[3] When back in the house, Appellant forced her to lick his feet and fellate him. After that, Appellant forced Lily to commit acts of anal sodomy on him, and then he subjected her to vaginal and oral intercourse repeatedly through the night.

The next morning, March 14, Lily was unable to walk. She was dizzy, sore, and bleeding from her vagina. She testified that later that evening, Appellant again made sexual advances and they had vaginal intercourse. She testified that she had no desire for intercourse, but she did not refuse him because she "wanted to stay alive" and escape with her children when she could.

On the morning of March 15, Lily devised a plan to get away from the house with her children. After escaping, she reported the preceding events to law enforcement authorities and had a CT scan and a rape examination performed. As a result of the assault, she sustained a concussion and severe

---

[3] Lily testified that she could have escaped when she was left outside but she did not do so out of fear for her sons who remained in the house with Appellant.

3

bruising about her head and body. She suffered from headaches, dizziness, and pain for several weeks.

Appellant was indicted for first-degree rape, first-degree sodomy, second-degree assault, first-degree unlawful imprisonment, and first-degree criminal abuse. The jury acquitted Appellant of sodomy, unlawful imprisonment, and criminal abuse; it found him guilty of first-degree rape and second-degree assault. This appeal followed.

## II. ANALYSIS

### A. UNANIMOUS VERDICT ISSUES

### 1. *The Jury Instruction for First-Degree Rape Violated Appellant's Right to a Unanimous Verdict.*

Citing *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), Appellant argues that his right to a unanimous jury verdict was violated because the phrasing of the jury instruction allowed the jury to convict him of first-degree rape, even though the jurors may not have unanimously agreed upon the same act of rape. A unanimous verdict is required under Section 7 of the Kentucky Constitution. *Id.* at 448 (Unanimous verdict means that to convict a defendant of a specific criminal act, all twelve jurors must agree on the specific criminal act committed by defendant). The Commonwealth and Appellant both acknowledge that, although Appellant was charged with a single act of rape by forcible compulsion against Lily, the evidence at trial was sufficient to prove that Appellant raped Lily on any of at least three occasions over the March 12-15 time frame.

4

Because the issue was not preserved at trial, Appellant seeks palpable error review under RCr 10.26.[4] The Commonwealth concedes the instruction is erroneous under our prevailing case law but it asserts that the error was not palpable. The jury instruction relevant to this issue stated:

> You will find the Defendant guilty of Rape, First Degree under this instruction if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or between March 12-15, 2013 and before the finding of the Indictment herein, he engaged in sexual intercourse with [Lily].
>
> AND
>
> B. That he did so by forcible compulsion.

Upon reading the instruction, it is immediately apparent that the jury was authorized to convict Appellant of only one rape, but individual jurors could base their finding of guilt on any of several different criminal acts occurring "between March 12-15." In *Johnson*, the defendant was convicted of a single act of first-degree criminal abuse based on evidence that the victim suffered from two different acts of criminal abuse inflicted at different times. The lack of specificity in the jury instruction created the possibility that some jurors found the defendant guilty based upon one act of abuse, while other jurors found the defendant guilty based upon a different act. *Id.* at 448. We

---

[4] Per RCr 10.26, "[a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

held that "a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Id.* at 449. More recently, in *Ruiz v. Commonwealth*, we noted that the "clear import of *Johnson* is that a verdict is not unanimous unless all of the jurors based their conviction of the defendant on the same criminal act; and that the instructions and verdict forms must be couched in language that eliminates any ambiguity regarding the jury's consensus." 471 S.W.3d 675, 678 (Ky. 2015).[5]

The rape instruction in the instant case suffers the same defect. The evidence presented at least three instances in the March 12-15 time span that would support a conviction for first-degree rape. The jury instruction did not direct the jury to consider any specific instance of alleged rape, and it did not provide a verdict form that would clearly indicate unanimity based upon the same criminal act. In these circumstances, as in *Johnson* and *Ruiz*, the unanimous agreement of the jury is not assured. The ambiguity in the instruction and the associated verdict form results in a violation of Appellant's right to a unanimous verdict.

---

[5] In *Ruiz*, we also suggested that the General Assembly could enact a continuing course of conduct crime to permit the Commonwealth to prosecute serial offenders when the evidence does not readily distinguish one criminal act from another. Such a statute would not be necessary here, however, because the evidence clearly distinguished the different acts of rape.

6

It is worth noting that the problem in this case could have been easily avoided. Unlike cases in which the victims are very young children unable to distinctly identify specific instances of abuse, Lily's clear and distinct testimony articulated each occasion on which Appellant raped her. Drafting the proper jury instruction would have been very simple, and need only have singled out one of the three occasions as the *corpus delecti* of the rape charge, and then phrased the jury instruction so that each of the jurors was focused on that single episode when they reached their verdict.

The Commonwealth contends that reversal is not justified because Appellant failed to bring this error to the attention of the trial court, and if he had done so, the deficiency in the instruction could have been cured before the case was submitted to the jury.[6] We addressed the same argument in *Ruiz*, where we relied upon *Johnson* to guide our determination that the violation of a defendant's right to a unanimous verdict is jurisprudentially intolerable as a fundamental error touching upon the right to due process. *Ruiz*, 471 S.W.3d at 679 (citing *Johnson*, 405 S.W.3d at 457). Finding no distinction in this case for a ruling otherwise, we find the error here to be palpable. Accordingly, we reverse the judgment as to Appellant's first-degree rape conviction and remand the matter for a new trial on the rape charge. We note that upon remand, unless the evidence has changed, Appellant would be subject to prosecution

---

[6] We also note that the deficiency could be cured by a verdict form that specified jury unanimity on a specific criminal event.

under a supplemental indictment charging him with any or all of the three instances of rape alleged to have occurred over the March 12-15 time span.

Appellant also seeks palpable error review of another unpreserved claim related to the first-degree rape conviction. Rape by forcible compulsion is a class B felony that can be elevated to a class A felony if the victim suffered a serious physical injury. KRS 510.040(2). The jury was instructed on the serious physical injury element by way of a special interrogatory instruction which it answered in the affirmative. Appellant contends that the interrogatory on serious physical injury suffered from the same ambiguity because it, too, failed to link the resulting serious physical injury to a specific act of rape during the March 12-15 time span. Having reversed on other grounds for a new trial on the rape charge, we need not address the particulars of this issue. On remand, the jury instructions should relate the element of serious physical injury to the specific act of rape during which it was inflicted.

## 2. The Jury Instruction for Second-Degree Assault Did Not Violate Appellant's Right to a Unanimous Verdict.

Appellant next contends that the jury instruction for second-degree assault violated his right to a unanimous verdict. This issue was also unpreserved, and so we review it for palpable error under RCr 10.26. Based upon KRS 508.020(1)(a) and (b), the jury instructions in this case authorized Appellant's conviction for second-degree assault on two different factual predicates: the jury could convict Appellant if it believed that he either "intentionally inflicted a serious physical injury upon [Lily] by using his hands and feet to strike, kick, choke and/or jump on her;" or "intentionally caused

8

physical injury to [Lily] by means of a dangerous instrument."[7]  Nothing in the instructions required all jurors to agree on either alternative, and it is impossible to determine from the verdict form if all jurors agreed on the same factual basis.  However, as Appellant points out, the jury heard no evidence about the use of a dangerous instrument as set out in the instruction's second alternative theory of second-degree assault.

Our case law provides support for Appellant's argument.  *See Davis v. Commonwealth*, 967 S.W.2d 574, 582 (Ky. 1998) (citing *Hayes v. Commonwealth*, 625 S.W.2d 583 (Ky. 1981)) ("[I]f the evidence would support a conviction under only one of two alternative theories, the requirement of unanimity is violated.").  However, our decision in *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010) defeats his argument.  *Travis* holds that when "there is no reasonable possibility that the jury actually relied upon the erroneous theory [of guilt]—in particular where there is no evidence of the theory that could mislead the jury—then there is no unanimity problem." *Id.* at 463.

In the instant case, there was no evidence to support the theory that Appellant used a dangerous instrument.  *Travis* thus compels our conclusion that there is no reasonable probability that the jury would have relied on this theory when it convicted Appellant of assault in the second degree.  No

---

[7] Subsection (c) of KRS 508.020(1) permits a second-degree assault conviction when a defendant wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.  That theory of second-degree assault was not presented in this case.

violation of Appellant's right to a unanimous verdict occurred. Consequently, palpable error cannot be found upon review of the second-degree assault instruction.

## B. APPELLANT WAS NOT ENTITLED TO A DIRECTED VERDICT ON RAPE AND ASSAULT CHARGES.

Causing serious physical injury to Lily was an essential element of the Commonwealth's case against Appellant for first-degree rape (as a class A felony) and for second-degree assault. Following the close of the Commonwealth's case, Appellant moved for a directed verdict on both the first-degree rape, as a class A felony, and on the second-degree assault charge on the basis that the Commonwealth did not prove that Lily sustained a serious physical injury as that term is defined in KRS 500.080(15). A defendant is entitled to a directed verdict "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

KRS 500.080(15) defines "serious physical injury" as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." Appellant contrasts Lily's physical injury with the injuries sustained by the victims in *Arnold v. Commonwealth*, 192 S.W.3d 420 (Ky. 2006), and *Parson v. Commonwealth*, 144

S.W.3d 775 (Ky. 2004), to support his assertion that the Commonwealth did not prove that Lily suffered serious physical injury.

In *Arnold*, the victim was hit in the head with a hammer and suffered a concussion and loss of blood. For two weeks the victim was "substantially incapacitated." Periodic vertigo and/or dizziness continued for fifteen months after the attack and her doctor testified that the condition was likely permanent. The attack left a permanent dent in the victim's head over which hair no longer grew properly. While able to return to work, movements were adjusted to avoid triggering the vertigo and dizziness. This evidence was found sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the victim suffered serious physical injury. 192 S.W.3d at 427.

In *Parson*, the victim initially suffered multiple contusions and strains, a laceration of the elbow which was sutured, and a cervical strain from a collision. While in physical therapy due to the injuries, the victim was diagnosed with headaches, cervical neck pain, lack of range of cervical motion caused by muscle spasms, upper thoracic pain, and numbness of the right arm; treatment continued about four months. The victim was subsequently referred to a pain management specialist. Treatment by the specialist for headaches and neck pain began about three months prior to trial and continued up to trial. At trial, the victim still suffered from neck pain; the numbness in her arms had improved and her headaches had dramatically improved. Anti-inflammatory medications and muscle relaxants were still being taken and referral for additional physical therapy was being considered.

11

The victim did not return to public employment in part because of the pain. While the defendant viewed the victim as suffering only substantial physical pain, this Court determined otherwise. We held that prolonged pain is a prolonged impairment of health and thus constitutes a serious physical injury, and that a jury could reasonably believe that the victim's ongoing suffering from the effects of her injuries constituted a "prolonged" impairment of health. 144 S.W.3d at 787-788.

Appellant notes that Lily had a concussion but was not admitted to the hospital, and that she testified that she was not in imminent danger of dying from her injuries. She testified that her bruises faded after a few weeks and that her dizziness and pain lasted a few weeks. Appellant argues that none of Lily's injuries amounted to serious physical injury because there was no substantial risk of death, no serious or prolonged disfigurement, no prolonged impairment of health, and no prolonged loss or impairment of the function of any bodily organ.

Lily clearly suffered an "impairment of health" in the form of a concussion, dizziness, headaches, and pain — all conditions similar to those suffered by the victims in *Arnold* and *Parson*. The question is whether Lily's condition constituted a "prolonged" impairment of health. Although the victims in *Arnold* and *Parson* suffered for a longer time than Lily, we have not prescribed the minimum time required for qualifying a painful condition as "prolonged," and we do not purport to do so here. As in *Arnold* and *Parson*, we conclude that the evidence regarding Lily's injuries and associated outcomes

12

was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the victim suffered a serious physical injury as that term is defined in the penal code. Appellant was not entitled to a directed verdict on the rape and assault charges.

## C. THE EVIDENTIARY ISSUES OF HEARSAY AND BOLSTERING DO NOT WARRANT RELIEF.

Lily's stepmother, Peggy Vass, testified that she "was just shocked at the way [Lily] looked" immediately after escaping from Appellant. Vass described Lily as "skin and bones, she was pale, eyes sunken, black eyes, bruises on her collar bone and red marks around her neck." She added, "I knew what had happened without [Lily] even saying." Vass also testified that Lily told her that Appellant "was after [Lily's daughter]." Trial counsel objected only to this statement on the basis of hearsay, and his objection was sustained.

On appeal, Appellant complains that Vass's testimony was replete with improper hearsay and bolstering. Because this issue was not preserved at trial, Appellant seeks review under RCr 10.26.

Upon review of the brief hearsay testimony to which Appellant objected at trial, we are convinced that a single brief statement was harmless. It was also information that was presented directly through Lily's testimony and was subject to cross-examination. Appellant identifies no other testimony to be scrutinized as improper hearsay. As to Appellant's unpreserved complaint that Vass's testimony improperly bolstered Lily's testimony, we simply disagree. The fact that Vass's observation tended to corroborate Lily's complaint about

13

the apparently vicious attack does not make it objectionable. Appellant is entitled to no relief on this issue.

### III.     CONCLUSION

For the foregoing reasons, the judgment of the Christian Circuit Court as to Appellant's first-degree rape conviction is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant's conviction for second-degree assault is affirmed.

All sitting. Minton, C.J.; Hughes, Noble, and Venters, JJ., concur. Cunningham, J., concurs in part and dissents in part by separate opinion in which Keller, J., joins. Wright, J., concurs in part and dissents in part by separate opinion in which Cunningham and Keller, JJ., join.

CUNNINGHAM, J., CONCURRING IN PART AND DISSENTING IN PART: With profound respect and affection for members of the Majority, I continue to be mystified how we continue to reverse serious cases over the issue of unanimity regarding jury instructions.

However, I will spare the reader of the rewriting of my previous lamentations as to how over the past 10 years we have created a procedural monster with our hyper-technical and unnecessary interpretation of our unanimous verdict requirement.

In this dissent, I go directly to the palpable error analysis.

We continue to allow our trial judges to be ambushed by such decisions as this one when we so lightly deem palpable error when the mistake has not been preserved. We are watering down our palpable error standard with

14

holdings such as this to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk—unwarned—onto the unanimity land mine.

In our decision here today, however, we create a unique and bizarre result which carries the potential of making appellate counsel for the Appellant to look incompetent and this court to look foolish. It sets in motion a swirl of procedural activity which will result in us chasing our own proverbial tail.

It's not hard to understand why the trial counsel did not object to either the one count of rape against his client, nor the instructions given pursuant to the charge. Over a three day period, the Appellant subjected his victim to such a harrowing experience as to constitute a marathon of torture. As the Majority recounts, he raped his wife on three and distinct separate days. The evidence was overwhelming that he was guilty of three counts of rape. But, the prosecution, in displaying rare restraint, charged him with only one count. Instead of being subject to three counts of rape carrying twenty years to life on each, the Appellant was subjected to one.

What is difficult to understand is why Appellant's counsel raises this issue on appeal. With our reversal here today on that issue, this charge will be returned to the trial court to try over. However, the vigilant and industrious prosecutor is going to salute the rationale of the Majority and move to dismiss the troublesome charge. The case will be re-submitted to the grand jury and one count of rape—with the alacrity of an amoeba—divide into three. This Appellant will return to court defending three separate counts instead of one.

15

It will be a most curious phone conversation between the lawyer for the Appellant and the Appellant when this case is rendered. "There is good news and bad news," the lawyer will begin, "the good news is we won the appeal, but the bad news is now you are going to court on three counts of rape instead of one."

That's not all. Rest assured this case will return to the appellate ladder when the Appellant understandably claims ineffective assistance of counsel at the appellate level. *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010). It takes creative powers to appeal a case and end up getting your client more time because of the appeal.

Yet, this court has set all this in motion by holding that the Appellant was subjected to manifest injustice for being convicted on one count of rape instead of three.

Therefore, I respectfully, but vigorously dissent, as to the unanimity issue.

Keller, J., joins.

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: While I concur with the majority as to the other issues, I respectfully dissent from its holding that the jury instructions on first-degree rape amount to palpable error, as they denied Appellant a unanimous verdict. The majority accepts Appellant's argument that the Commonwealth presented a case under which he could have been convicted of three counts of first-degree rape for his actions between March 12 and March 15, 2013. The Commonwealth chose to only

16

indict him on one count of rape in the first degree and identified it as occurring during the four-day period.

A jury verdict must be unanimous and Appellant contends that jurors could have been considering different alleged rapes when they reached a verdict finding him guilty of rape in the first degree. His position is that, even though the jury found him guilty of all elements of first-degree rape, if it was possible for one juror to base the conviction on one rape and another juror to base the conviction on a different rape, then the verdict was not unanimous. The Commonwealth concedes that "the instruction given in this case appears to be erroneous under this Court's case law." I disagree.

The Commonwealth charged Appellant with first-degree rape based on Appellant's wife refusing his sexual advances on the night of March 12, 2013. After Lily's refusal, Appellant attacked her—hitting, biting, jumping on her chest with both feet, and kicking Lily for approximately two hours. As a result of this attack, she suffered a concussion, bite marks, bruises, and vaginal bleeding. He only stopped his assault when Lily assured him that she would never refuse him again.

Appellant then left the room and returned with a dress that belonged to Lily's twelve-year-old daughter and had Lily put it on. Appellant began groping her body and calling Lily by her daughter's name, causing Lily to become startled and pull back. When Appellant asked Lily if there was a problem, Lily immediately assured him that there was not. Appellant, however, indicated that there was a problem, namely, that he could see Lily's face instead of her

17

daughter's. Appellant turned off the lights and initiated sex with Lily. He continued to call her by her daughter's name and even pulled up a picture of Lily's daughter on his cell phone and laid it on Lily's chest. Whenever the picture would fade, Appellant would say "don't close your eyes, look at daddy," and tap the phone to bring the picture back up. He continued to have sex with Lily while commenting on the woman her daughter had become. Lily testified that the next morning, it was as if a switch had been flipped and he acted as if everything were normal.

During its opening statement, the Commonwealth told the jury that there were other times during the course of the four days covered by the indictment when Appellant had sex with Lily. However, the Commonwealth indicated that Lily just gave in to Appellant's advances without any objection because she was scared and didn't want to be beaten anymore. The Commonwealth then made the admission that the other sexual encounters would be considered consensual under the law because she went along with them.[8] This was a misstatement of the law, but was binding upon the Commonwealth. We have held: "[jury] instructions must be considered as a whole, taking into account the evidence and closing argument of counsel." *Epperson v. Commonwealth,* 197 S.W.3d 46, 60 (Ky. 2006). If closing arguments should be taken into

---

[8] I note that it was within the Commonwealth's discretion to choose which crimes to prosecute. *Hoskins v. Maricle,* 150 S.W.3d 1, 20 (Ky. 2004); *see also Wayte v. United States,* 470 U.S. 598, 607 (1985). Obviously, the Commonwealth mistakenly believed could only charge Appellant with one count of rape and chose to prosecute him based on the events on the night of March 12.

18

account, opening statements should as well. The Commonwealth's misstatement of the law permeated the entire trial: from opening statement to jury instructions, and ultimately, to the jury's verdict.

The fact that the other sexual encounters were consensual under the law was conclusively established by the Commonwealth's admission. As set out in CR 36.02: "[a]ny matter admitted under Rule 36 is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Although CR 36.02 is referring to admissions made pursuant to a pretrial request for admissions, an admission made during trial would have at least as much impact. The Commonwealth never attempted to amend its admission. The court never corrected the misstatement of law. And Appellant, who benefited from a reduction in the possible number of rape charges against him, relied upon the admission.

Appellant's only argument in closing concerning the rape charge was that it was a matter of "he said/she said." Appellant urged the jury to believe his statement to the police that his wife did not refuse him sexually as opposed to her testimony that she did refuse him on the night of March 12, 2013. His defense was based entirely on his assertion that his wife never refused his sexual advances. He obviously knew the Commonwealth had made an admission and relied upon that in his closing argument.

Since the Commonwealth incorrectly admitted that the sexual encounters, other than the night of March 12, 2013, and the acts of sodomy on the night of March 13, 2013, were consensual, that fact was conclusively

19

established. Therefore, the remaining sexual encounters—those occurring times other than the night of March 12—could not be considered rape under the case presented by the Commonwealth and the jury's verdict must, therefore, have resulted only from the sexual encounter occurring on that night.

Appellant also raises the issue of whether the victim suffered a serious physical injury as a part of first-degree rape. Only one physical assault occurred. That assault took place when Lily refused Appellant's sexual advances on the night of March 12, 2013, and he attacked and raped her. Appellant admitted the domestic assault and only argued that it should be fourth-degree assault rather than second-degree assault. I reiterate that, according to Lily's testimony, Appellant attacked her—hitting, biting, jumping on her chest with both feet, and kicking Lily for approximately two hours. As a result of this attack, she suffered a concussion, bite marks, bruises, and vaginal bleeding. The jury's determination that the victim received serious physical injuries can only be connected to the assault and rape on the night of March 12, 2013. Therefore, the jury's verdict was clearly unanimous.

Cunningham and Keller, JJ., join.


COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

20

Andy Beshear
Attorney General of Kentucky
Office of the Attorney General

Jason Bradley Moore
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General